YORK INDUSTRIAL CENTER, INC. AND YORK BUILDING COMPANY v. MICHIGAN MUTUAL LIABILITY COMPANY.

(Filed 24 July, 1967.)

**1. Appeal and Error § 57—**

Findings of the trial court supported by evidence are conclusive on appeal.

**2. Insurance § 3—**

An ambiguous provision of an insurance contract will be given that meaning most favorable to insured, and exception to coverage is not favored; nevertheless the policy must be construed as written.

**3. Same—**

Where insurer receives an additional premium for amending the policy by substituting another word for a word used in the original policy, the parties must necessarily intend that the word used in substitution should cover a larger field of liability.

**4. Same—**

Where a word used in an insurance policy is defined therein, it must be given the meaning as defined in the policy, regardless of whether a broader or narrower meaning is customarily given to such word, since the parties are free to contract and give words embodied in their agreement the meaning they see fit.

**5. Insurance § 95—**

Where a proviso in a policy of property damage insurance excepts from coverage injury or destruction of property intended by the insured, such exclusionary clause will be construed to except from the coverage only those acts of the insured in wilfully and knowingly damaging property.

**6. Trespass § 1—**

While trespass requires an intentional entry upon the land of another, it does not require that such entry be with wrongful motive, and therefore there is a trespass even though the entry is made under a *bona fide* belief by the trespasser that he owned the land or was entitled to enter thereon as a matter of right.

**7. Insurance § 95—**

The policy in suit provided coverage for liability incurred by insured for injury to or destruction of property caused by an unexpected event or happening. The findings were to the effect that insured's surveyor made a mistake in locating a corner between insured's land and the contiguous land of another, and that due to this mistake insured damaged trees along a 20 foot strip of the contiguous land for which the owner recovered damages. *Held:* Insured is entitled to recover from insurer under the policy.

APPEAL by defendant from *Canaday, J.,* at the Second January 1967 Regular Session of WAKE.

The plaintiffs were insured under a policy of liability insurance issued by the defendant. Dr. Louis N. West and wife obtained judgment against the present plaintiffs in the Superior Court of Wake County for damages for trespass upon their land by driving and operating a bulldozer thereon, resulting in the destruction of trees and shrubs. The present plaintiffs paid the judgment and demanded reimbursement therefor from the defendant. Upon the defendant's denial of liability therefor under its policy, this action was entered. The parties waived trial by jury and consented that the judge hear the evidence and find the facts. The amount of the plaintiffs' recovery, if any, was stipulated.

The facts found by the court, which are significant upon this appeal, are as follows:

"5. That the general liability coverage under said policy as originally written obligated the defendant * * * 'To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, * * * caused by accident'; that * * * the plaintiffs * * * upon the payment of an additional premium * * * secured an endorsement to the policy where the word 'occurrence' was substituted for the word 'accident' in the policy, and occurrence was defined in the policy as follows:

" 'Occurrence means an unexpected event or happening or a continuous or repeated exposure to conditions which results during the policy period in * * * injury to or destruction of property * * * provided the insured did not intend that injury * * * or destruction would result. * * *'

"6. That in the late Spring of 1958, the plaintiffs were the owners of and interested in the development of a tract of land located on the east side of U. S. Highway 1A (known as the Old Wake Forest Road), Raleigh, North Carolina; that said tract lay to the south and east of the property of Louis N. and

Betsey John West; that J. W. York, who was President of both plaintiff corporations, in furtherance of the developments of the York property, employed John C. Castleberry, a registered engineer and an expert in the field of land surveying, to make a survey of the York property and to establish and mark the dividing line between the York property and the West property; that Castleberry * * * established the south line of the West property * * *; that as he surveyed said south line, he followed the line * * * to an old existing iron stake * * * approximately 21 feet short of the length of the south line as called for in the West deed; that Castleberry searched for an iron pipe or other evidence of a corner to the east of the old existing iron pipe along the same course but was unable to find any further sign of the southeast corner of the West property; * * * that Castleberry turned the angle called for in the West deed at the point of the old iron to run in a northerly direction the eastern line in the West property; * * * that in establishing the lines dividing the York and West property, which lines were the south and east lines of the West property, Castleberry chopped the survey line and placed stakes thereon at intervals of approximately 200 feet.

"7. That Castleberry was instructed to, and in fact did point out to W. H. Gilliam, who was engaged by the plaintiffs to clear and grade their property, the location of the Wests' southern and eastern property lines; that thereafter Gilliam cleared and graded the York property along the south line of West, and along the east line of West for a distance of 200 — 250 feet north from West's southeast corner; that Gilliam never crossed the line staked by John Castleberry on either the southern or eastern sides of the West property. * * *

"9. * * * [T]hat West instituted an action entitled *L. N. West and Betsey John West v. York Industrial Center, Inc., et al.*, alleging that York had carelessly, negligently, willfully, wrongfully and unlawfully damaged the West property; that York filed answers denying the allegations in the West complaint, praying that the Court appoint a surveyor under G.S. 38-4 to determine the true boundary lines of West and York * * *; that said action was tried at the June 1960 Term of Wake County Superior Court, and resulted in a verdict against the plaintiffs herein * * *

"10. That the survey by the Court-appointed surveyors in the action of *West v. York* showed that the eastern line of the West property as located by Castleberry was approximately 21

feet west of the eastern line of the West property as established by the Court-appointed surveyors * * *

"11. That judgment was entered on said verdict against the plaintiffs herein * * *; that York demanded that the defendant herein pay said judgment but that the defendant herein refused to do so; that * * * the plaintiffs herein paid [the judgment].

"12. That during the grading and clearing along the eastern line of the West property as established by Castleberry, which is the area where the West property was damaged, the plaintiffs herein were acting under the belief that the grading and clearing was being done on property owned by them; that the plaintiffs at no time graded, cleared or went upon the lands of the Wests with knowledge that said land was in fact owned by the Wests and not by the plaintiffs."

Upon these findings of fact, the court concluded that York's entry upon the property of the Wests was "an unexpected event or happening within the meaning of the policy issued by the defendant," that York did not intend to damage or destroy the property of the Wests within the meaning of those terms as used in the policy issued by the defendant, and that the damage to the Wests' property by the plaintiffs herein constituted an occurrence within the meaning of the policy issued by the defendant. The court accordingly gave judgment in favor of the plaintiffs for the amount of their damage as stipulated.

In the action brought by the Wests against the present plaintiffs, the jury found that the present plaintiffs did "trespass upon the land of the" Wests. In that action, as the result of a motion by the present plaintiffs, the then defendants, for a bill of particulars and for an order requiring the Wests to make the allegations of their complaint more definite and certain and to strike certain portions thereof, the Wests filed a response stating that their complaint contained only a single cause of action, which was "one for damages growing out of trespass." All of the pleadings, motions and responses in the suit by the Wests against the present plaintiffs were offered in evidence at the hearing of the present case.

*Holding, Harris, Poe & Cheshire for defendant appellant.*
*Manning, Fulton & Skinner for plaintiff appellees.*

LAKE, J. The appellant states in its brief that in this case there is no issue of fact. As it concedes, the evidence is sufficient to

support the findings of fact by the trial judge. These are, therefore, conclusive. *Sherrill v. Boyce,* 265 N.C. 560, 144 S.E. 2d 596.

The determinative question is, Does the policy issued by the defendant insure the plaintiffs against liability for damage to the land of a third person by the insured's entry thereon and acts thereon due to a *bona fide* mistake as to the location of the boundary line between the land of the insured and the land of such third person? The basic principles to be applied in answering this question were recently stated by us in *Insurance Co. v. Insurance Co.,* 269 N.C. 341, 152 S.E. 2d 436, as follows:

> "It is well settled that, in the construction of a policy of insurance, ambiguous provisions will be given the meaning most favorable to the insured. Exclusions from and exceptions to undertakings by the company are not favored. *Insurance Co. v. Insurance Co.,* 266 N.C. 430, 146 S.E. 2d 410; *Anderson v. Insurance Co.,* 266 N.C. 309, 145 S.E. 2d 845. Nevertheless, it is the duty of the Court to construe an insurance policy as it is written, not to rewrite it and thus make a new contract for the parties. *Hardin v. Insurance Co.,* 261 N.C. 67, 134 S.E. 2d 142; *Richardson v. Insurance Co.,* 254 N.C. 711, 119 S.E. 2d 871; *Pruitt v. Insurance Co.,* 241 N.C. 725, 86 S.E. 2d 401."

The policy, as originally issued, provided coverage against legal liability for the payment of damages because of injury to or destruction of property "caused by accident." Subsequently, it was amended by the attachment of a rider providing for the substitution of the word "occurrence" for the word "accident" and defining "occurrence." For this change in the policy, the plaintiffs paid a substantial additional premium. The necessary inference is that the parties intended that the policy, as amended, would provide substantial additional protection to the policyholder; that is, they intended that the word "occurrence," as defined in the rider, would bring within the protection of the policy substantial risks not included under the original limitation to damage to property "caused by accident."

Since the word "occurrence" is defined in the amended policy, it must be given that meaning, regardless of whether a broader or narrower meaning is customarily given to the term, the parties being free, apart from statutory limitations, to make their contract for themselves and to give words therein the meaning they see fit. Substituting this agreed definition of "occurrence" for the word "accident" in the policy, the undertaking of the defendant is thus stated in the contract of the parties:

> "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

injury to or destruction of property, * * * caused by an un-expected event or happening * * * which results during the policy period in * * * injury to or destruction of property * * * provided the insured did not intend that injury * * * or destruction would result. * * *"

We turn first to the proviso which excepts from the coverage, otherwise provided by the policy, liability of the insured for injury to or destruction of property intended by him. This, like other ex-ceptions from coverage, otherwise provided by a policy of insurance, is to be strictly construed against the company.

It is obvious that the plaintiffs intended to cut down and destroy every tree which they did destroy on the land of the Wests. It is equally clear that they did so in the belief that these trees and shrubs belonged to them and not to the Wests. That is, the plaintiffs did not destroy the trees with the intent to injure or destroy any property right of the Wests. A fair construction of this excluding clause in the policy is that it is intended to remove from the protec-tion otherwise afforded by the policy only the liability of an insured who wilfully damages property, knowing that he has no right to do so. Therefore, if the judgment rendered against the plaintiffs was for damage to the land of the Wests "caused by an unexpected event or happening," the proviso does not eliminate the plaintiffs' claim from the coverage of the policy.

The basis of the plaintiffs' present claim against the defendant is a judgment rendered against the plaintiffs in favor of the Wests for trespass. In the absence of negligence, which is not shown in the present case, trespass to land requires an intentional entry thereon. *Schloss v. Hallman,* 255 N.C. 686, 122 S.E. 2d 513. It does not, how-ever, require that such entry be wilful and an action for trespass lies even though the entry was made under a *bona fide* belief by the de-fendant that he was the owner of the land and entitled to its posses-sion or was otherwise entitled to go upon the property. See *Lee v. Stewart,* 218 N.C. 287, 10 S.E. 2d 804; 52 Am. Jur., Trespass, §§ 7, 35; 87 C.J.S., Trespass, § 5; Restatement, Torts, 2d, § 164; Prosser on Torts, 3d ed., § 17. Consequently, there is no inconsistency be-tween the claim of the plaintiffs for reimbursement for their pay-ment of the judgment rendered against them for trespass and their contention that they "did not intend" the injury or destruction of the property of the Wests, which was the basis for such judgment against them. The testimony of the plaintiffs' witnesses Castleberry, Gilliam, Edwards and York, the admission of which the defendant assigns as error on the ground of irrelevance to any issue in the present action, was relevant to this question of the plaintiffs' intent

to injure or destroy the property of the Wests. It showed a *bona fide* effort by the plaintiffs to determine the location of the boundary of the West property so as to avoid injury to it. This assignment of error is, therefore, without merit.

We are brought next to the question of whether the injury to or destruction of the property of the Wests was caused by "an unexpected event or happening" within the meaning of the policy issued by the defendant. The cause of the injury to the property of the Wests was the crossing of the boundary line by the plaintiffs and their acts subsequent thereto without knowledge of such crossing. This invasion of the land of the Wests was, in turn, due to the error of the surveyor in locating the line. This error of the surveyor was "an unexpected event" within the meaning of this policy.

In *Haynes v. American Casualty Co.*, 228 Md. 394, 179 A 2d 900, employees of a contractor, by mistake, crossed a boundary, entered the property of another person and cut down trees thereon. The court held the damage so done was "caused by accident" within the meaning of the liability insurance policy there in question, which was similar to the original policy issued by the defendant here. In *J. D'Amico, Inc., v. City of Boston*, 345 Mass. 218, 186 N.E. 2d 716, an excavating contractor, following lines established for his guidance by the city engineer, went over the line of an adjoining property owner and destroyed trees on his land. The contractor, having been sued by the landowner, brought a proceeding to compel his liability insurer to defend the claim made against him by the property owner. The policy was similar to the one originally issued to the defendant here. The Supreme Court of Massachusetts, though reversing a judgment in favor of the insured on grounds not presented in the matter before us, said, "[T]respass by D'Amico by mistake or without actual intent to invade property upon which it knew it was not entitled to carry on work under its contract, would be 'caused by accident' within the policy." A like result was reached under a like policy in *McAllister v. Hawkeye-Security Ins. Co.*, 68 Ill. App. 2d 222, 215 N.E. 2d 477. See also *Gray v. State* (La. App.), 191 So. 2d 816.

The policy issued by the defendant in this case, as amended, was designed to provide coverage substantially more extensive than that limited to liability for damages "caused by accident." We hold, therefore, that the invasion of the land of the Wests by the plaintiffs, and the resulting damage thereto and liability therefor, was "caused by an unexpected event or happening," namely, an error as to the location of the boundary line, and that such injury to the land of the Wests was not intended by the plaintiffs. Consequently, the liability of the plaintiffs to the Wests for such damages was

within the coverage of the policy and there was no error in the denial of the defendant's motion for nonsuit or in the entry of the judgment for the plaintiffs.

Affirmed.