FOOD LION, INC., Plaintiff,

v.

CAPITAL CITIES/ABC, INC., ABC Holding Co., American Broadcasting Companies, Inc., Lynne Litt, Richard N. Kaplan, Ira Rosen and Susan Barnett, Defendants.

No. 6:92CV00592.

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

Nov. 27, 1996.

1218

W. Andrew Copenhaver, David A. Shirlen, Elizabeth B. McGee, Winston–Salem, NC, John J. Walsh, New York City, Richard L. Wyatt, Jr., Washington, DC, for plaintiff.

H. Hugh Stevens, Jr., Jerry S. Alvis, Katherine A. O'Connor, Raleigh, NC, Randall Turk, William Jeffress, Jr., Washington, DC, Alan W. Duncan, Greensboro, NC, for defendants.

## MEMORANDUM OPINION

TILLEY, District Judge.

This matter is before the Court on summary judgment motions by both parties. Defendants filed a Motion for Summary Judgment on Claims of Fraud, Trespass, Negligent Supervision and Civil Conspiracy [Doc. # 366]. Plaintiff filed a Motion for Summary Judgment as to the Third and Fourth Claims for Relief (Trespass and Re-

1. Lynne Litt, now Lynne Neufer Dale, filed a notice of name change and requested that all future pleadings directed to her use the name Lynne Neufer Dale [Doc. # 194]. Defendants

spondeat Superior for Trespass) [Doc. # 379]. For the reasons stated herein, both of these motions are DENIED.

### I.

Defendants Lynne Litt [1] and Susan Barnett applied with Plaintiff Food Lion for employment as, respectively, a meat wrapper and a deli clerk. Both individuals, actually employed by ABC's news magazine program *PrimeTime Live,* falsified parts of their employment applications and omitted any reference to their true reasons for seeking employment. Both individuals were interested in working at Food Lion only in order to record footage of the deli and meat departments by using a hidden camera. Litt indicated that she had prior experience as a meat wrapper. She provided false references, a false employment background, and a false address. Barnett also provided false references, a false employment history, a false address and a false phone number. As a result of this application process, both Barnett and Litt were hired by Food Lion. Litt worked for Food Lion for 12 days. Barnett worked for Food Lion for 8 days.

### II.

Summary judgment is proper only if there is no genuine issue as to any material fact. The moving party on a motion for summary judgment will have the burden of pointing to deficiencies in the record as to matters upon which the opposing party has the burden of proof such that the opposing party cannot prove its claim or defense or showing otherwise why, upon the undisputed facts in the record, the moving party is entitled to judgment as a matter of law. The party opposing the motion for summary judgment may not merely rest on its pleadings, but must provide evidence or point to evidence already in the record, properly authenticated pursuant to Rule 56(e), that would be sufficient to support a jury verdict in its favor. *See* Fed. R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–

did not file a motion to change the caption of the case to reflect that name change. Because the caption still refers to Ms. Dale as Lynne Litt, the Court will use that name to refer to her herein.

14, 91 L.Ed.2d 202 (1986); *Orsi v. Kirkwood,* 999 F.2d 86 (4th Cir.1993); *Herold v. Hajoca Corp.,* 864 F.2d 317 (4th Cir.1988), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989).

■ It should be noted that resolution of the fraud and trespass claims is governed by the law of the "forum in which the acts giving rise to the claim occurred." *Tatham v. Hoke,* 469 F.Supp. 914, 916 (W.D.N.C.1979) (citing *Charnock v. Taylor,* 223 N.C. 360, 26 S.E.2d 911 (1943)), *aff'd,* 622 F.2d 587 (4th Cir.1980). Therefore, the claims involving Litt's alleged fraud and trespass will be governed by North Carolina law since she was employed by Food Lion in North Carolina. The claims involving Barnett's alleged fraud and trespass will be governed by South Carolina law since the actions giving rise to the claims occurred in that state.[2]

### III.

### A. Fraud

■ Defendants moved for summary judgment on Plaintiff's fraud claim. The parties do not dispute the elements of fraud in North Carolina: (1) false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) which does in fact deceive; (5) resulting in damage to the injured party. *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.,* 323 N.C. 559, 374 S.E.2d 385, 391 (1988). South Carolina has similar requirements for a fraud action: (1) a representation; (2) the falsity of the representation; (3) the materiality of the representation; (4) knowledge of its falsity, or reckless disregard for its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of the falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. *Hansen v. DHL Lab., Inc.,* 316 S.C. 505, 450 S.E.2d 624, 628 (Ct.App.1994), *aff'd,* 319 S.C. 79, 459 S.E.2d 850 (1995). Defendants contend that Plaintiff's claim must fail because

Plaintiff can show no damages proximately resulting from the misrepresentations made by Litt and Barnett.

■ Plaintiff claims two distinct types of damages. The first type of damages involves losses and expenditures associated with events leading up to and the eventual broadcast of *PrimeTime Live*'s story on Food Lion ["publication damages"]. The second type of damages are those associated with the hiring, training, and employment of Litt and Barnett and the costs associated with replacing them when each quit after only a few days on the job. The first type of damages, publication damages, is the subject of another motion currently pending with this court. Because the present issue can be resolved without reference to those damages, they will not be addressed further here.

Defendants claim that Plaintiff has no legally cognizable damages emanating from the misrepresentations made by Litt and Barnett. Defendants claim that Food Lion can not recover for the cost of hiring, training, and employing Litt and Barnett because work was received in return. Because the two were at-will employees who could be fired or could leave Food Lion's employ at any time, Defendants assert that the cost involved with replacing the employees was a cost Food Lion would have necessarily incurred regardless of Litt's or Barnett's reason for leaving.

In support of its contentions, Defendants offer cases where an employee was illegally discharged, the employer subsequently learned of the discharged employee's "resume fraud" or other wrongdoing, the employer claimed that the employee would have never been hired had the truth been known, and asserted the after-acquired evidence as a defense in the action for illegal dismissal. As Defendants note, courts have almost universally held that such a defense will not bar the discharged employee from all monetary damages. *See, e.g., Russell v. Microdyne Corp.,* 65 F.3d 1229 (4th Cir.1995); *Mardell v. Harleysville Life Ins. Co.,* 65 F.3d 1072 (3d Cir. 1995); *Wallace v. Dunn Construction Co.,* 62

---

2. Neither of the parties argued about the choice of law involved in this case. It is set out here only for the purposes of clarity and completeness. In most instances, there will be no practical difference in the outcome.

F.3d 374 (11th Cir.1995); *Wehr v. Ryan's Family Steak Houses, Inc.,* 49 F.3d 1150 (6th Cir.1995); *Shattuck v. Kinetic Concepts, Inc.,* 49 F.3d 1106 (5th Cir.1995). These cases are not applicable in this situation. The situation presented here, where Defendants Litt and Barnett misrepresented themselves and their backgrounds, accepted jobs with Food Lion when they were actually employed by ABC, and had goals in those positions far different from those normally associated with the jobs, is not analogous to a situation where a person is fired illegally and the employer-wrongdoer then attempts to avoid damages by claiming that the person would have never have been hired if the employer had known about the resume fraud or, in the case of wrongdoing during the time of employment, that the person would have been fired anyway. In the employment cases, there are important deterrence principles embodied in the various statutes typically involved in those claims which would be frustrated if employers were allowed to escape damage obligations based on evidence acquired after the wrongful act. The Supreme Court noted that "[t]he ADEA and Title VII share common substantive features and also a common purpose: 'the elimination of discrimination in the workplace.' Congress designed the remedial measures in these statutes to serve as a 'spur or catalyst' to cause employers 'to self-examine and to self-evaluate their employment practices and to endeavor to eliminate, so far as possible, the last vestiges' of discrimination." *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, ——, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995) (citations omitted). The Court went on to say that "[i]t would not accord with this scheme if after-acquired evidence of wrongdoing that would have resulted in termination operates, in every instance, to bar all relief for an earlier violation of the Act." *Id.* The situation in the present case does not present similar concerns. In fact, if summary judgment were granted on this issue under Defendants' reasoning, the message

attached to the ruling would be that prospective at-will employees could lie with impunity in order to obtain a position.

The issue of publication damages aside, there is enough evidence that Plaintiff was damaged by the employment costs associated with employing and replacing Defendants Litt and Barnett to allow Plaintiff to get to the jury on this issue. At least one court has noted that "if the employer has somehow been damaged by the plaintiff's misrepresentations or misconduct on the job, it may seek its own damages where appropriate." *Massey v. Trump's Castle Hotel & Casino,* 828 F.Supp. 314, 323 (D.N.J.1993). It is up to the jury to examine the employment relationship and determine whether such damage occurred. The Court can not say, as a matter of law, that it did not.

### B. Trespass

Both parties have filed motions for summary judgment on the trespass claim. Defendants assert that Plaintiff consented to the entry of Litt and Barnett and that this consent prevents success on the trespass claim. Plaintiff claims that Litt and Barnett lacked Food Lion's consent to enter the premises for the purposes of secretly filming hidden camera footage. Plaintiff also claims that acts of trespass were committed by other members of the *PrimeTime Live* staff.[3] In response, Defendants argue that no claim for trespass can be maintained against members of the *PrimeTime Live* staff who are not named Defendants in the action.

■ Defendants are correct that any trespass committed by *PrimeTime Live* employees other than Litt and Barnett would not trigger either direct or respondeat superior liability here. Plaintiff's Amended Complaint [Doc. # 49] stated its Third Claim for Relief (the cause of action for trespass) against Litt and Barnett. The Fourth Claim for Relief (respondeat superior for trespass) also, by its terms, limits the claim to the actions of Litt and Barnett.[4] Therefore,

3. Plaintiff draws no distinction between entry into the private areas of the store and entry into the public areas of the store for the purpose of video taping secret footage.

4. Plaintiff claims that under the liberal notice pleading requirements, the actions of other ABC employees besides Litt and Barnett are subsumed within their respondeat superior claim. A review of the Amended Complaint leads to the

there can be no direct liability nor respondeat superior liability for the trespass actions of *PrimeTime Live* staff members other than Litt and Barnett. The actions, however, of other staff members engaging in concerted activity with Litt and Barnett might be relevant to Food Lion's claim against ABC and Capital Cities for respondeat superior liability.

■ Under North Carolina law, the elements of trespass are as follows: "(1) [t]hat the plaintiff was either actually or constructively in possession of the land at the time the alleged trespass was committed; (2) [t]hat the defendant made an unauthorized, and therefore an unlawful, entry on the land; and (3) [t]hat the plaintiff suffered damage by reason of the matter alleged as an invasion of his rights to possession." *Matthews v. Forrest*, 235 N.C. 281, 69 S.E.2d 553, 555 (1952) (citations omitted). South Carolina law has similar requirements. *See, e.g., Snow v. City of Columbia*, 305 S.C. 544, 409 S.E.2d 797, 802 (1991) (stating that "[t]he unwarrantable entry on land in the peaceable possession of another is a trespass").

It is undisputed that both Litt and Barnett, in their apparent capacity as Food Lion employees, were given consent to enter Food Lion properties. Therefore, Plaintiff's claim for trespass will fail unless there is some reason that the consent to enter was not valid or the scope of the consent was exceeded.

1. Consent Based on Misrepresentation

■ A reasonable jury could find that Food Lion would have never employed Litt and Barnett if it had known their true identities and purposes for entering Food Lion property. The misrepresentations used by Litt and Barnett to gain employment could potentially negate any consent Food Lion gave to their entry. Neither the North Carolina nor the South Carolina courts have directly addressed consent based on misrepresentation. The Restatement of Torts does address the issue. Section 173 states that

conclusion that the claim is in fact limited to ABC's and/or Capital Cities' liability for the actions of Litt and Barnett. Rule 15(b) of the Federal Rules of Civil Procedure does not, as Plaintiff claims, provide assistance to Plaintiff.

consent to enter land which is induced by misrepresentation or mistake is governed by section 892B. Restatement (Second) of Torts § 173 (1965). Section 892B states that

> [i]f the person consenting to the conduct of another is induced to consent by a substantial mistake concerning the nature of the invasion of his interest or the extent of the harm to be expected from it and the mistake is known to the other or is induced by the other's misrepresentations, the consent is not effective for the unexpected invasion or harm.

Restatement (Second) of Torts § 892B(2) (1979). North Carolina courts have cited this section with approval in a context other than trespass. *See, Douglas v. Nationwide Mutual Ins. Co.*, 54 N.C.App. 334, 283 S.E.2d 166, 168 *rev. denied*, 304 N.C. 587, 289 S.E.2d 564 (1981). Furthermore, the Restatement sections pertaining to trespass are often cited by the North Carolina courts. *See, e.g., Smith v. VonCannon*, 283 N.C. 656, 197 S.E.2d 524, 528–29 (1973) (citing Restatement of Torts sections pertaining to the definition of trespasser, the definition of licensee, and the privilege to enter land created by consent); *York Industrial Center, Inc. v. Michigan Mutual Liability Co.*, 271 N.C. 158, 155 S.E.2d 501, 506 (1967) (citing Restatement of Torts section 164 on intrusions under mistake); *Miller v. Brooks*, 123 N.C.App. 20, 472 S.E.2d 350, 355–56 (1996) (citing Restatement of Torts section 164). Based on their past use of the Restatement sections pertaining to trespass and the North Carolina Court of Appeals' citation of section 892B with approval, this Court believes that the North Carolina Supreme Court would be persuaded by the Restatement's treatment of this issue. Furthermore, although the citations to the sections on trespass are not as numerous as the citations in North Carolina cases, the Restatement has been cited by South Carolina courts, *see, e.g., Snow v. City of Columbia*, 305 S.C. 544, 409 S.E.2d 797, 802 (1991) (citing section 158 on trespass).

Plaintiff's remedy, when other acts of alleged trespass were discovered after the filing of the Amended Complaint, was to move the Court to allow a second or subsequent amendment.

The Restatement approach reflected in section 892B is well reasoned and will be applied in the absence of alternate direction by the North Carolina and South Carolina courts. Under that approach, a reasonable jury could find that the misrepresentations made by Litt and Barnett induced the consent of Food Lion and that Food Lion's mistake concerned the nature of the invasion or the extent of the harm to be expected.

Defendants rely extensively on *Desnick v. American Broadcasting Co.*, 44 F.3d 1345 (7th Cir.1995), for the proposition that misrepresentation in the inducement of consent will not negate that consent. Judge Posner noted in *Desnick* that

> some cases ... deem consent effective even though it was procured by fraud. There must be something to this surprising result. Without it a restaurant critic could not conceal his identity when he ordered a meal, or a browser pretend to be interested in merchandise that he could not afford to buy. Dinner guests would be trespassers if they were false friends who never would have been invited had the host known their true character, and a consumer who in an effort to bargain down an automobile dealer falsely claimed to be able to buy the same car elsewhere at a lower price would be a trespasser in the dealer's showroom.

44 F.3d 1345, 1351 (7th Cir.1995). In *Desnick, PrimeTime Live* sent undercover test patients to an eye clinic to obtain hidden camera footage of their own eye examinations. *Id.* at 1348. The Seventh Circuit held that this action did not support a claim for trespass. It is appealing to rely on *Desnick* because it involves hidden cameras, false motives, and *PrimeTime Live*—all of which are common denominators with the present case. A closer examination will reveal why the facts presently before the court compel a different outcome.

As the *Desnick* court noted, "[t]he lines [between misrepresentations which will be allowed and those which will not] are not bright—they are not even inevitable." Therefore, questions involving these issues are often, as in the present case, close. But even the *Desnick* court did not say that misrepresentation could never operate to negate consent. The court expressly stated that

> If a homeowner opens his door to a purported meter reader who is in fact nothing of the sort—just a busybody curious about the interior of the home—the homeowner's consent to his entry is not a defense to a suit for trespass.... And likewise if a competitor gained entry into a business firm's premises posing as a customer but in fact hoping to steal the firm's trade secrets.

*Id.* at 1352. Furthermore, *Desnick* draws an example from the Restatement (Second) of Torts section 892B. This is the same section set out above for the proposition that fraud can negate consent.

 The fatal flaw in Defendants' argument is that it rests on the contention that Litt and Barnett were Food Lion employees and that Food Lion consented to presence of employees in the areas where Litt and Barnett were allowed to go.[5] In fact, Litt and Barnett were actually ABC employees. A reasonable jury could find their presence in Food Lion to be purely incidental to their jobs with *PrimeTime Live* and that they hoped to be admitted to areas of the store not open to the general public to "steal" that which was otherwise not available to them—the images of those areas. Like the *Desnick* examples of the purported meter reader who was really a snoop and the competitor who posed as a customer in order to gain entry and steal trade secrets, the misrepresentations which allowed Litt and Barnett to enter the restricted parts of Food Lion's stores could negate the consent which they were given.

---

**5.** Plaintiff brings to the attention of the Court instances where Litt entered the back areas of a Food Lion store while she was off the clock. In one particular instance, Litt went into Food Lion on her day off. While there she rummaged through items in the meat manager's office, read aloud from a manual located in that office, and spent several hours watching (and filming) the meat cutter at work. While these episodes might present an easier question, they will not be addressed separately because it is unnecessary in light of the ultimate conclusion reached here.

Furthermore the *Desnick* court stated several factors which were apparently fundamental to its ultimate conclusions. One factor was that the test patients "entered offices that were open to anyone expressing a desire for ophthalmic services." *Id.* at 1352. Litt and Barnett were, through their ruse, allowed to enter parts of the stores not generally open to the public. Another factor was that "[t]here was no theft, or intent to steal, trade secrets." *Id.* at 1353. Although the analogy to the theft of trade secrets is imperfect, Defendants did gain from the entry of Litt and Barnett what they otherwise would not have had, a story. Courts have held that the taking of unauthorized images of a person's property at the direction of law enforcement officers can be a seizure sufficient to violate the Fourth Amendment. *See, e.g., United States v. Villegas,* 899 F.2d 1324 (2nd Cir.1990), *cert. denied,* 498 U.S. 991, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990); *Ayeni v. CBS Inc.,* 848 F.Supp. 362 (E.D.N.Y.), *aff'd,* 35 F.3d 680 (2nd Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1689, 131 L.Ed.2d 554 (1995). So, here, the taking of images which would have been unavailable absent misrepresentations which provided entry into restricted portions of Food Lion stores could be, at a minimum, a wrongful acquisition.[6]

### 2. Scope of Consent

■ If consent is properly given and the consent is not negated, "[e]ven an authorized entry can be trespass if a wrongful act is done in excess of and in abuse of authorized entry." *Miller v. Brooks,* 123 N.C.App. 20, 472 S.E.2d 350, 355 (1996). *See also, Dietemann v. Time,* 449 F.2d 245 (9th Cir.1971); *Newman Mfg. Co. v. Young,* 109 Ga.App. 763, 137 S.E.2d 367 (1964). Therefore, if the

acts of the Defendants Litt and Barnett exceeded the scope of the consent authorized by Food Lion, their subsequent acts could constitute a trespass.

A case closely analogous to the present case is *Copeland v. Hubbard Broadcasting, Inc.,* 526 N.W.2d 402 (Minn.Ct.App.1995).[7] In that case, a part time student and an employee of a television station entered the plaintiff's home in the company of a veterinarian. *Id.* at 403. The veterinarian asked plaintiffs for permission to bring along a student interested in a career in veterinary medicine. *Id.* The plaintiffs consented to this entry. *Id.* Unbeknownst to either the doctor or the plaintiffs, the student was actually an employee of a local television station interested in doing a report on veterinary medicine. *Id.* She recorded her visit to plaintiffs' home via a hidden camera. *Id.* Plaintiffs eventually sued the television station for, among other things, trespass. *Id.* Defendants' motion for summary judgment was granted by the district court. In reversing the lower court, the court of appeals noted that "Courts in other jurisdictions have recognized trespass as a remedy when broadcasters use secret cameras for news gathering. . . . News gathering does not create a license to trespass or to intrude by electronic means into the precincts of another's home or office." *Id.* at 405 (citations omitted). Concluding that summary judgment should not have been granted, the court stated that "[t]he district court determined that the Copelands did not present any evidence indicating that the scope of consent was limited to educational purposes. The record, however, indicates that consent was given only to allow a veterinary student to accompany [the

---

6. Before leaving the topic of consent negated by fraud, reference to Defendants' search and seizure analogy is appropriate. Defendants assert that this case is analogous to search and seizure law where courts have held that the use by law enforcement officers of undercover operations do not necessarily violate the Fourth Amendment. Those cases rely on the proposition that "in the detection of many types of crimes, the Government is entitled to use decoys and to conceal the identity of its agents." *Lewis v. United States,* 385 U.S. 206, 209, 87 S.Ct. 424, 426, 17 L.Ed.2d 312 (1967). Defendants, unlike law enforcement agents, are accorded no special privilege for the

use of such methods. Although news gathering is an important societal interest, it does not entitle news gathering organizations to the exceptions allowed law enforcement officers. The use by law enforcement personnel of undercover operations is not analogous to the situation here.

7. The facts of *Copeland* also make it relevant to the discussion above of consent negated by fraud. The *Copeland* court, however, sets out its discussion in terms of exceeding consent and so it will be discussed in those terms here.

veterinarian][8].... there is sufficient evidence to withstand summary judgment." *Id.* Under the reasoning of *Copeland,* summary judgment cannot be granted in favor of Defendants on this point. As the *Copeland* court noted, "[w]hether a possessor of land has given consent for entry is, when disputed, a factual issue." *Id.* Whether Litt and Barnett could actually be considered Food Lion employees acting within the scope of the consent given by Food Lion when they actually were working for ABC is a factual question which will preclude summary judgment on this point.

The application of *Copeland* in this context is even more compelling because the case uses almost the same language used by the North Carolina Court of Appeals in *Miller*—that "wrongful conduct following an authorized entry on land can result in trespass." *Copeland,* 526 N.W.2d at 405. Implicit in the *Copeland* court's determination is the idea that recording undercover footage could be "wrongful conduct."

### 3. Denial of Summary Judgment

For the reasons stated above, summary judgment for Defendants must be denied. It cannot be said as a matter of law that the consent given by Food Lion necessarily bars any trespass claim. Furthermore, summary judgment will not be granted for Plaintiff on these claims. The materiality of the affirmative misrepresentations to the consent given is a question for the jury. Furthermore, the jury could find that Litt and Barnett were acting as employees of Food Lion and that their activities did not exceed the scope of the consent given.

### C. Remaining Claims

Defendant does not dispute the that ABC has respondeat superior liability if Litt and Barnett are found to have committed trespass.[9] (Defs.' Mem. in Opp'n to Pl.'s Mot. for Summ.J., at 13 n. 6). Instead, Defendants rely on the argument that Litt and Barnett did not trespass. Since the issue of trespass survives summary judgment, this issue must survive as well.

Defendants' claim for summary judgment on the remaining claims of negligent supervision and civil conspiracy is based on the absence of any underlying tortious activity to support the claims. Because both the fraud and trespass claims survive summary judgment, summary judgment will be denied as to these two claims.

### IV.

For the reasons stated herein, Defendants' Motion for Summary Judgment on Claims of Fraud, Trespass, Negligent Supervision and Civil Conspiracy. [Doc. # 366] is DENIED. Plaintiff's Motion for Summary Judgment as to the Third and Fourth Claims for Relief (Trespass and Respondeat Superior for Trespass). [Doc. # 379] is DENIED.

---

**8.** Defendants make the point that Plaintiff never expressly prohibited video taping by its employees. In a different context, the Court of Appeals of Wisconsin stated that "[a]n advanced objection to entry under remotely possible circumstances need not be made ... especially when the identity of the intruder is unknown." *Prahl v. Brosamle,* 98 Wis.2d 130, 295 N.W.2d 768, 780 (Ct.App.1980). It is of no consequence to the present situation that a specific advanced objection was not given.

**9.** The exclusion of Capital Cities from this sentence is not an approval of Defendants' argument that Food Lion would need to show factors for piercing the corporate veil in order to hold Capital Cities liable. This issue was only raised in a footnote in Defendants' brief and has not been sufficiently developed at this time.