**PRIME TV, LLC, Plaintiff,**

v.

**TRAVELERS INSURANCE CO.; and Travelers Property Casualty Insurance Company, a Member of The Travelers Group, Defendants.**

**No. 1:01CV00952.**

United States District Court,
M.D. North Carolina.

Aug. 7, 2002.

Thomas M. Van Camp, Van Camp, Meacham & Newman, PLLC, Pinehurst, NC, for Plaintiff.

G. Michael Barnhill, Amy L. Cox Gruendel, Womble, Carlyle, Sandridge & Rice, PLLC, Charlotte, NC, William T. Crbett, Jr., Mark D. Sheridan, Drinker, Biddle & Shanley, LLP, Florham Park, NJ, for Defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiff, Prime TV, LLC, ("Plaintiff" or "Prime TV") originally filed this action in the General Court of Justice, Superior Court Division, Moore County, North Carolina, against Defendants Travelers Indemnity Company (incorrectly pled as Travelers Insurance Company) and Travelers Property Casualty Company (collectively "Defendants" or "Travelers"), seeking declaratory relief and alleging breach of contract, unfair and deceptive trade practices, bad faith and unfair dealings, and breach of fiduciary duty. Defendants removed to this court based on diversity of citizenship. Plaintiff asserts that Defendants failed to provide a defense and cov-

erage for numerous lawsuits filed against Plaintiff under the Telephone Consumer Protection Act ("TCPA").

Plaintiff and Defendants have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff's motion is limited to its claims for declaratory relief and breach of contract relating to Defendants' duty to defend. Defendants seek a declaration that they owe no duty to defend or indemnify Plaintiff in connection with the underlying lawsuits. For the following reasons, the court will grant Plaintiff's motion for judgment on the pleadings. Defendants' motion for judgment on the pleadings will be denied.

### FACTS

Plaintiff markets and sells satellite television services in its capacity as an independent contractor for DirecTV. In January and February 2001, Plaintiff commenced discussions with various companies that specialized in faxed advertisements. These companies allegedly informed Plaintiff that these companies possessed lists of consumers, including their fax numbers, who desired information concerning satellite television services. Plaintiff alleges that the fax companies affirmatively represented to Plaintiff that the lists included only those individuals who had specifically requested information regarding the services provided by Plaintiff. These companies further represented to Plaintiff that they would fax any advertisement prepared by Plaintiff for a designated fee per fax. Based upon these representations, Plaintiff prepared an advertisement for DirecTV services and provided it to several fax companies. In February and March 2001, the faxes were sent to millions of potential customers. As a result of the faxes, Plaintiff was sued in numerous venues throughout the United States. Each of

the lawsuits allege that Prime TV violated the TCPA by sending unsolicited facsimile advertisements. Some of the suits also allege state law claims for negligence, unfair trade practices, invasion of privacy, and trespass.

Plaintiff purchased a commercial general liability insurance policy from Defendants, which was effective from September 25, 2000, through September 25, 2001. The limit of liability under the policy is $2,000,000. Plaintiff also purchased a commercial excess liability insurance policy from Defendants, which was effective from September 25, 2000, through September 25, 2001. The limit of liability under the excess liability policy is $1,000,000. Plaintiff subsequently renewed these policies for the period from September 25, 2001, to January 1, 2002.

After the lawsuits were filed against Prime TV, Prime TV submitted the suit papers to Defendants and requested that Defendants provide a defense under the applicable insurance policies. After investigating the claims, Defendants refused to defend Plaintiff in the underlying actions or accept coverage.

Plaintiff contends that the policies cover the acts alleged in the underlying lawsuits, requiring Defendants to defend and indemnify Plaintiff in the lawsuits. Plaintiff asserts that the alleged acts are covered by the general liability policy under both Section I, Coverage A and Section I, Coverage B, as well as the excess liability policy.

Under Coverage A, the general liability policy provides coverage for property damage and states as follows:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ... 'property damage' to which this insurance applies. We will have the right and duty to de-

fend any 'suit' seeking those damages....

. . . .

b. This insurance applies to ... 'property damage' only if:

(1) The ... 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory';....

Policy Number I–680–371D839–IND–00, Coverage Form CG 00 01 10 93 at 1 (attached to Compl. at Ex. G) (hereinafter General Liability Policy). The policy excludes coverage for "property damage expected or intended from the standpoint of the insured." *Id.* The policy contains the following relevant definitions:

12. 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . . .

15. 'Property damage' means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

*Id.* at 10–11. The policy does not define "accident."

Under Coverage B, the policy provides coverage for advertising injury liability and states as follows:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ... 'advertising injury' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages....

. . . .

b. This insurance applies to:

. . . .

(2) 'Advertising injury' caused by an offense committed in the course of advertising your goods, products or services;....

*Id.* at 4. The policy contains the following relevant definitions:

1. 'Advertising injury' means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

*Id.* at 9. The policy does not define the term "right of privacy." Finally, the policy excludes coverage for "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;....

*Id.* at 4. The extended liability policy provides similar coverages, including coverage for property damage and advertising injury.

## DISCUSSION

Plaintiff and Defendants have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). In considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), this court must view facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the non-moving party. 5A

Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure Civil* 2d § 1368 at 590 (Supp.2002). A motion for judgment on the pleadings is determined by the same standard applied to a motion to dismiss for failure to state a claim. *See Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998); *Pledger v. North Carolina Dep't of Health & Human Servs., Dorothea Dix Hosp.,* 7 F.Supp.2d 705, 707 (E.D.N.C.1998). Thus, judgment on the pleadings is appropriate if, taking the non-moving party's allegations as true, the movant clearly establishes that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *Eagle Nation, Inc. v. Market Force, Inc.,* 180 F.Supp.2d 752, 754 (E.D.N.C.2001).

### A. *Canons of Construction and Legal Principles*

■ The issue before the court concerns the construction of the insurance policies, specifically whether the policies require Travelers to defend Prime TV in the underlying state court actions. Construction and application of insurance policy provisions is a question of law appropriate for summary disposition. *See Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1121 (4th Cir.1995) (citing *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.,* 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970)).

■ North Carolina courts have outlined several principles of construction that guide courts in construing insurance policies. *See Wachovia,* 276 N.C. at 354, 172 S.E.2d at 522. As in other contracts, the aim of construction of policy terms is to arrive at the intent of the parties when the policy was issued. *See id.* This intent "must be found in the language used by the parties to the [policy]." *Duke v. Mutual Life Ins. Co. of N.Y.,* 286 N.C. 244, 247, 210 S.E.2d 187, 189 (1974). "Where a policy defines a term, that definition is to

be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." *Woods v. Nationwide Mutual Insurance Co.,* 295 N.C. 500, 505–06, 246 S.E.2d 773, 777 (1978). Because the insurance company drafts the policy terms, any ambiguity as to their meaning "must be resolved in favor of the policyholder." *Wachovia,* 276 N.C. at 354, 172 S.E.2d at 522. Furthermore, in construing the provisions of an insurance policy, wherever possible the policy will be interpreted in a manner which gives, but never takes away, coverage. *Nationwide Mut. Fire Ins. Co. v. Allen,* 68 N.C.App. 184, 190, 314 S.E.2d 552, 555 (1984). Nevertheless, an ambiguity does not exist by virtue of the fact that the insured asserts a construction contrary to the construction offered by the insurance company. *Wachovia,* 276 N.C. at 354, 172 S.E.2d at 522. An ambiguity will exist only if "in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend." *Id.* (citation omitted).

■ An insurer's duty to defend the insured is broader than its obligation to indemnify the insured. *Waste Mgmt. of the Carolinas, Inc. v. Peerless Ins. Co.,* 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). "An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial." *Id.* Furthermore, where the allegations are arguably within the coverage of the policy, there is a corresponding duty to defend. *Id.* at 691 n. 2, 340 S.E.2d at 377 n. 2 (stating that "pleadings that disclose a mere possibility that the insured is liable (and that the potential liability is covered) suffice to impose a duty to defend upon the insurer"). Thus, "[w]hen the pleadings

state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." *Id.* at 691, 340 S.E.2d at 377.

 In order to determine whether the underlying state actions are covered by the provisions of the Travelers policies, "the policy provisions must be analyzed, then compared with the events as alleged.... [T]he pleadings are read side-by-side with the policy to determine whether the events as alleged are covered or excluded." *Id.* at 693, 340 S.E.2d at 378. Thus, the arguments of the parties before the court must be assessed against these legal principles and canons of construction.

Prime TV contends that the underlying actions fall within the "property damage" and "advertising injury" coverage provided by the Travelers policies requiring Travelers to defend Prime TV in the underlying actions. Travelers, on the other hand, argues that it owes no duty to defend or indemnify Prime TV in connection with the underlying lawsuits.

B. *"Property Damage" Coverage*

 The Travelers policies provide coverage for "property damage" if "[t]he 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.' " (General Liability Policy at 1 .) "Property damage" is defined by the Travelers policies to include "the loss of use of tangible property that is not physically injured." (*Id.* at 11.) "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[1] (*Id.* at 10.) Thus, to prevail on its claim that Travelers is obligated to defend Prime

TV in connection with the underlying actions, Prime TV must establish the possibility: (1) that the injury alleged in the underlying actions constitutes "property damage" as defined in the Travelers policies; and (2) that such "property damage" is the result of an "occurrence" as that term is defined in the Travelers policies.

The act of faxing DirecTV advertisements to the recipients constituted "property damage" as defined by the Travelers policies. In the underlying actions, Prime TV is being sued under the TCPA. The legislative history of the TCPA identifies two problems associated with unsolicited facsimile advertising:

'First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax.... [T]he recipient assumes both the cost associated with the use of the facsimile machine, and the cost of the expensive paper used to print out facsimile messages.'

*Destination Ventures, Ltd. v. FCC,* 844 F.Supp. 632, 636 (D.Or.1994) (quoting H.R.Rep. No. 102–317, at 5, *reprinted in 14082 U.S. Congressional Serial Set,* 102d Cong.1st Sess. 10, 25 (1991), *aff'd* 46 F.3d 54 (9th Cir.1995)); *see also Lewis v. Gitt,* No. CIV.A. 97–7216, 1998 WL 334235, at *2 (E.D.Pa. June 22, 1998) (quoting same). Thus, as a result of the DirecTV facsimiles, the recipients lost the use of their fax machines as well as permanent loss of facsimile paper and ink.[2]

 Despite Defendants' argument otherwise, the "property damage" was also the result of an "occurrence" as defined by

---

1. The Travelers policies do not define the term "accident."

2. Even assuming *arguendo* that the faxing of the DirecTV advertisements did not constitute "property damage," Defendants conceded this point by not addressing it in their briefs.

the Travelers policies. Defendants argue that Plaintiff intentionally caused the property damage, and therefore it was not the result of an "occurrence." Defendants further contend that: "It is hornbook law in North Carolina that to determine coverage, the underlying *complaint* must be 'read side-by-side with the policy to determine whether the events as alleged are covered or excluded.'" (Travelers Mem. of Law in Reply to Pl.'s Resp. to Defs.' Cross–Motion for J. on the Pldgs. at 2 (emphasis added) (quoting *Waste Mgmt.*, 315 N.C. at 693, 340 S.E.2d at 377)). Defendants further contend that because the underlying complaints allege that Prime TV acted intentionally and that it "willfully and knowingly" violated the TCPA the court need not look to Prime TV's responsive pleadings. Defendants' argument, however, is inapposite to North Carolina case law.

■ In order to determine whether the underlying state actions are covered by the provisions of the Travelers policies, "the *pleadings* are read side-by-side with the policy to determine whether the events as alleged are covered or excluded." *Waste Mgmt.*, 315 N.C. at 693, 340 S.E.2d at 378 (emphasis added). "An insurer's duty to defend is ordinarily measured by the facts in the *pleadings*." *Id.* at 691, 340 S.E.2d at 377 (emphasis added). Furthermore, an insurer has an affirmative duty to investigate the alleged facts.

> Where the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy, the duty to defend is not dismissed because the facts alleged in a third-party complaint appear to be outside coverage, or within a policy exception to coverage.... [M]any jurisdictions have recognized that the modern acceptance of notice

pleading and of the plasticity of pleadings in general imposes upon the insurer a duty to investigate and evaluate facts expressed or implied in the third-party complaint as well as facts learned from the insured and from other sources.

*Id.* at 691–92, 340 S.E.2d at 377–78. Thus, rather than accepting the underlying plaintiffs' allegations that Prime TV intentionally violated the TCPA as true and determining that DirecTV facsimiles were not covered under the Travelers policies, Travelers had a duty to investigate the facts alleged in the underlying complaints and facts alleged by Prime TV.[3]

The intent component of the "occurrence" analysis requires a subjective inquiry. *See id.* at 696, 340 S.E.2d at 380 ("Whether events are 'accidental' and constitute an 'occurrence' depends upon whether they were expected or intended from the point of view of the insured."). Under the Travelers policies, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (General Liability Policy at 10.) Where insurance policies fail to define "accident," such as the Travelers policies, the North Carolina Supreme Court has defined it as "'an event that takes place without one's foresight or expectation; and [sic] undesigned, sudden, and unexpected event; chance; contingency.'" *North Carolina Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 708, 412 S.E.2d 318, 325 (1992) (quoting *Iowa Mut. Ins. Co. v. Fred M. Simmons, Inc.*, 258 N.C. 69, 74, 128 S.E.2d 19, 22 (1962)). "Even intentional acts, the consequences of which are unexpected, have been held to qualify as 'occurrences'." *Waste Mgmt.*, 315 N.C. at 695, 340 S.E.2d at 379; *see also Stox*, 330 N.C. at 709, 412

---

**3.** Prime TV denies that it violated the TCPA and asserts that the facsimiles were sent only to those individuals and entities that request-ed or solicited information regarding Prime TV services.

S.E.2d at 318 (concluding that "where the term 'accident' is not specifically defined in an insurance policy, that term *does* include injury resulting from an intentional act, if the injury is not intentional or substantially certain to be the result of the intentional act").

Although the fax companies intentionally sent the facsimiles to the recipients, as ordered by Prime TV, Prime TV believed that the recipients requested the information regarding Prime TV's services. Therefore, although Prime TV intentionally requested the advertisements to be faxed, such a request is not an intentional act made with the intent to cause property damage. Thus, the "property damage" was the result of an "occurrence" as defined by the Travelers policies and Defendants have a duty to defend Plaintiff in the underlying state actions. *See York Indus. Ctr., Inc. v. Michigan Mut. Liab. Co.*, 271 N.C. 158, 155 S.E.2d 501 (1967) (holding that the intentional felling of trees belonging to another was an "occurrence" where it was done in the mistaken belief, induced by a surveyor's error in locating the property line, that the trees were on the plaintiff's property).[4]

### C. *"Advertising Injury" Coverage*

■ Even assuming *arguendo* that the underlying state actions do not fall under the "property damage" coverage of the Travelers policies, the act of faxing DirecTV advertisements to the recipients is covered under the "advertising injury" liability section in the Travelers policies. Thus, Travelers has a duty to defend Prime TV in the underlying state actions.

The Travelers policies provide coverage for " 'advertising injury' caused by an offense committed in the course of advertising [Prime TV's] goods, products or services." (General Liability Policy at 4.) "Advertising injury" is defined by the Travelers policies to include "oral or written publication of material that violates a person's right of privacy." (*Id.* at 9) The policy, however, excludes coverage for "advertising injury" "arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." (*Id.* at 4.)

The act of faxing DirecTV advertisements to the recipients constitutes "advertising injury" as defined by the Travelers policies. First, the DirecTV facsimiles were sent in the course of advertising Prime TV's services. Prime TV markets and sells satellite television services in its capacity as an independent contractor for DirecTV. Second, the DirecTV advertisements constitute "advertising injury" as defined by the Travelers policies, that is a "written publication of material that violates a person's right of privacy." [5] (*Id.* at 9.) The underlying actions seek redress for the invasion of privacy rights (as well as the loss of use of property) under the TCPA. "The TCPA was enacted to 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls

---

4. Despite Defendants' argument that the definition of "occurrence" in *York Indus. Ctr., Inc. v. Michigan Mut. Liability Co.* is broader than "occurrence" as defined in the Travelers policies, the court finds otherwise. "Occurrence" as defined by the policy in *York Indus. Ctr.* means "an unexpected event or happening or a continuous or repeated exposure to conditions which results during the policy period in ... injury to or destruction of property ... provided the insured did not intend that injury ... or destruction would result." 271 N.C. 158, 159, 155 S.E.2d 501, 503 (1967). This definition of "occurrence" is nearly identical to "occurrence" as defined by the Travelers policies and "accident" as defined by the North Carolina Supreme Court.

5. Travelers failed to define the offense of "oral or written publication of material that violates a person's right of privacy."

to the home and to facilitate interstate commerce by restricting certain uses of facsimile ([f]ax) machines and automatic dialers.'" *International Sci. and Tech. Inst., Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146, 1150 (4th Cir.1997) (quoting *S.Rep. No. 102–178*, at 1 (1991), *reprinted in* 1991 U.S.C.C.A.N.1968). Finally, as discussed above, although the fax companies intentionally sent the facsimiles to the recipients, as ordered by Prime TV, Prime TV believed that the recipients requested the information regarding Prime TV's services. Therefore, although Prime TV intentionally requested the advertisements to be faxed, Prime TV did not "have knowledge of [their] falsity." (*See* General Liability Policy at 4.)

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings will be granted. Because Plaintiff's motion is limited to its claims for declaratory relief and breach of contract relating to Defendants' duty to defend, the court need not address whether Defendants have a duty to indemnify Plaintiff in the underlying actions at this time. However, Defendants' motion for judgment on the pleadings will be denied.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.