# Richmond

Lynchburg Foundry Company, Employer, and Employers Liability Assurance Corporation, Insurance Carrier v. Thomas S. Irvin.

October 13, 1941.

Record No. 2469.

Present, All the Justices.

266

The opinion states the case.

*Edmunds, Whitehead, Baldwin & Graves,* for the appellants.

*Basil G. Watkins,* for the appellee.

SPRATLEY, J., delivered the opinion of the court.

The appellants, an employer and its insurance carrier, complain of an order entered by the Industrial Commission of Virginia allowing a claim for compensation for injury, filed against the employer by the appellee, the employee.

At the original hearing before a member of the Industrial Commission, the appellants denied the claim solely on the ground that the injury did not result from an accident. They here contend that the evidence does not support a finding that the injury arose either by accident or out of the course of the employment of the claimant, within the meaning of The Virginia Workmen's Compensation Act, Virginia Code, 1936, section 1887, *et seq.*

Two witnesses, the claimant and his attending physician, testified at the hearing. The facts found from their evidence by the majority of the Commission may be summarized thus:

Thomas S. Irvin, the claimant, was employed as a core maker for the Lynchburg Foundry Company, a manufacturer of metal pipe. He was sixty-four years of age and had been engaged in that type of work for twenty-five years. His duties required him to make cores of sand, round them up, put them on plates in a furnace, heat them until they became hard, then take them out and dress them off.

While employed in this work, Irvin wore a pair of safety shoes. On the front of each of these shoes was a metal guard or tip to prevent the toes of the workmen from being mashed by the frequent falling of clamps and plates handled by them. His shoes were purchased from his employer who recommended, but did not require, them to be used by its employees.

Irvin had worn the shoes, during working hours only, for about a month and had not, prior to the event hereinafter mentioned, felt or suffered any trouble with his feet from their use.

On a day in the early part of April, 1940, while stooping to get sand in connection with his work, he felt a painful or pinching sensation in the front of his right foot. Thinking it was a grain of sand, he removed the shoe to examine his foot and found a red spot just back of the knuckle of the little toe. The skin had not been broken nor was there a blister. He showed the injured foot to a fellow-workman, then cut off the offending part of the shoe,—all of one side and the whole top of it,—'' and continued with his work.

A medical doctor who examined the claimant's foot on May 2nd, said he found, at that time, ''a peculiar little punched out place on the top of the foot.'' He described it as an ''ulcer about one-fourth the size of a dime'' on the ''dorsum of the foot just back of the little toe.'' The physician thought it was a ''fungus infection'' or possibly a ''malignancy.'' He excised it to make a fresh surface, hoping that it would then heal better. The sore place became progressively worse, however, be-

cause of an underlying pathological condition, a hardening of the arteries, which hindered the circulation of the blood. In September, 1940, it became necessary to amputate the foot.

On May 15, 1940, Irvin made a formal report of his injury to his employer and then stopped his work to secure medical treatment. From the time of the discovery of his injury until May 15th, he took certain sanitary precautions to protect his foot from infection. When asked if the condition of his foot was caused by the constant rubbing of the shoe, he said that he took the shoe off when he first felt it hurting him. It was then that he cut off part of the front of his shoe.

The majority of the Commission further found that there was "nothing to indicate an occupational condition or a repetition of pressure or a rubbing of the toe by the action of the shoe," and held that the employee sustained an injury by an accident arising out of and in the course of his employment. The employee was awarded compensation of $9.32 per week for total disability from May 15, 1940, to September 27, 1940, and like compensation beginning September 27, 1940, for one hundred and twenty-five weeks for the loss of his right foot, in addition to the medical, surgical, and hospital services incident to his injury.

██ The evidence of the claimant is sufficient to sustain the finding of the Commission as to the above stated facts. While some contradiction may be thought to arise from speculative inferences, there is no positive or direct evidence in conflict therewith. The facts so found are, therefore, binding and controlling upon us, (Code, section 1887 (61)) and it only remains to be determined whether they are sufficient in law to justify the allowance of compensation.

█ The expressions "injury by accident" and "arising out of and in the course of employment," (Code, section 1887 (2) (d)), have given rise to many legal controversies. Time after time we have expressly held that

they should be liberally construed in favor of the workmen to carry out the humane and beneficent purposes of the Act. *Bradshaw* v. *Aronovitch*, 170 Va. 329, 196 S. E. 684; *City of Alexandria* v. *McClary*, 167 Va. 199, 188 S. E. 158; *Tyree* v. *Commonwealth*, 164 Va. 218, 179 S. E. 297; *Big Jack Overall Company* v. *Bray*, 161 Va. 446, 171 S. E. 686.

██ While the authorities differ in their definition of the word "accident," they are generally agreed that it should be defined in a popular rather than in a technical sense. Thus, we find it often defined as given in Webster's New International Dictionary (2nd Ed.) as "a befalling; an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; * * * a mishap resulting in injury to a person or thing." Schneider's Workmen's Compensation Law, (2nd Ed.) section 135. Words and Phrases (Perm. Ed.), Vol. 1, p. 329.

In *Big Jack Overall Company* v. *Bray, supra,* Mr. Justice Hudgins gave careful thought and consideration to the construction to be placed on the words "injury by accident." He extensively reviewed and analyzed the definitions given by the English and American courts, and in the textbooks and legal treatises. He recognized the difficulty of formulating an exact legal comprehensive definition of the word "accident" to be applied to all circumstances and contingencies. Speaking for this court, he approved, as applicable to the facts there under consideration, the following statement found in Vance on Insurance, at page 569:

██ "The definition of accident generally assented to is an event happening without any human agency, or, if happening through human agency, an event which, under the circumstances, is unusual and not expected by the person to whom it happens."

See also *Newsoms* v. *Commercial Cas. Ins. Co.*, 147 Va. 471, 137 S. E. 456; 52 A. L. R. 363; *Hall's Bakery* v. *Kendrick,* 176 Va. 346, 11 S. E. (2d) 582.

■ An accident is an event which creates an effect which is not the natural or probable consequence of the means employed and is not intended, designed, or reasonably anticipated. *Zurich General Acci., etc., Ins. Co.* v. *Flickinger,* 33 F. (2d) 853, 68 A. L. R. 161.

The facts in this case show that Irvin had worn the particular pair of shoes for more than a month without any ill effect from them until the day he suffered the injury. They were only worn during his working hours as a reasonable precaution against the danger and hazard of his employment. Their use was a custom peculiar to the character of the work in which he was engaged. Irvin had no thought of injury, no warning, and did not know of the danger until the moment he first felt a pinching sensation. He then removed the apparent cause of his injury.

It is not difficult to understand how the stooping of the employee and the flexing of his toes in an effort to lift heavy objects might, by a mischance, produce the character of injury complained of, especially through the means employed. One could hardly expect that a safety shoe, which had been worn for a month without discomfort, would suddenly and without warning begin to pinch the foot. Yet, that is what the evidence shows here. The safety shoe in protecting from one danger, through an unexpected, undesigned and fortuitous happening, created another injury. By reason of a "mishap," an untoward event, an injury resulted to the person of the employee.

■ The second assignment of error requires little discussion.

The accident to Irvin took place within the period of his employment, while he was engaged in his ordinary work and while he was doing or trying to do that for which he had been employed. It was traceable to his employment as a result of an exposure occasioned by the nature of that employment. The exposure was a hazard or risk to which he was not equally exposed apart from

his employment. The wearing of the metal tipped safety shoes was an accepted, customary precaution in the particular type of employment in which the employee was engaged. Thus there was a causal connection between the conditions under which he performed his duties and the resulting injury. *Bradshaw v. Aronovitch, supra.*

The appellants rely upon the case of *Hurd* v. *Hesse & Hurt,* 161 Va. 800, 172 S. E. 289, 176 S. E. 437.

Without undertaking to justify or to criticize the conclusion in that case, which was reached by two of the justices with some apparent difficulty, it is sufficient to say that the facts upon which it was based are readily distinguishable from those of the present case. In that case, there was "no sudden, unlooked-for mishap." There was no defect in the appliance used. The injury was found to be a result ordinarily and naturally flowing from the conduct of the claimant by continuous and repeated operation of a process after a warning of danger.

Our conclusion is that the appellee, Irvin, is entitled to compensation for injury by an accident arising out of and in the course of his employment.

It is agreed by counsel at the bar of this court that by an oversight or clerical error, the Industrial Commission awarded the claimant the sum of $9.32 weekly, when the amount based on his average weekly wages entitled him to the maximum of $16.00 per week. The award of the Industrial Commission is, therefore, amended to provide compensation to the claimant at the rate of $16.00 per week for the time specified in the award, and in all other respects the award of the Commission is affirmed.

*Amended and affirmed.*