**RESOURCE BANKSHARES CORP. et al., Plaintiffs,**

v.

**ST. PAUL MERCURY INSURANCE COMPANY, Defendant.**

No. CIV.A. 2:03CV764.

United States District Court,
E.D. Virginia,
Norfolk Division.

July 1, 2004.

712

W. Edgar Spivey, R. Johan Conrod, Jr., Kaufman & Canoles, P.C., Norfolk, VA, for Plaintiff.

Alan B. Rashkind, Furniss, Davis, Rashkind & Saunders, P.C., Norfolk, VA, for Defendant.

Charles E. Spevacek, Meagher & Geer, P.L.L.P., Minneapolis, MN, for Defendant.

## ORDER

MORGAN, District Judge.

This matter arises from a claim by Plaintiffs Resource Bankshares Corporation and Resource Bank (collectively "Resource") that Defendant St. Paul Mercury Life Insurance Company ("St. Paul") wrongfully denied Resource's request for defense and indemnification pursuant to its commercial general liability (CGL) insurance policy. The motions before the Court are Resource's Motion for Partial Summary Judgment (Document No. 8), seeking a declaration that St. Paul should have defended and indemnified it for requested claims, and St. Paul's Motion for Summary Judgment (Document No. 10), seeking a dismissal on the basis that it did not have a duty to defend or indemnify Resource. The Court held a hearing on these motions on May 17, 2004. For the reasons stated in this Order, the Court **GRANTS** Resource's Motion for Partial Summary Judgment in part, **DENIES** Resource's motion in part, and **TAKES UNDER ADVISEMENT** the remainder of the motion. The Court **DENIES** St. Paul's Motion for Summary Judgment in Part, **GRANTS** St. Paul's motion in part, and **TAKES UNDER ADVISEMENT** the remaining issue of the motion.

## I. RELEVANT BACKGROUND

### A. FACTUAL BACKGROUND AND PROCEDURAL HISTORY [1]

On January 31, 1998, 1999, 2000, 2001, and 2002, St. Paul issued to Resource an

---

1. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from those facts in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, in considering cross motions for summary judg-

insurance policy ("the Policy(ies)") which incorporated a Commercial General Liability Protecting Insuring Agreement Form and an Umbrella Excess Liability Protection Insuring Agreement Form. (Compl. at ¶¶ 6–9, 11). On or about March 8, 2002, a class action suit was filed against Resource in Marion County, Indiana ("Indiana Litigation") alleging violations of the Telephone Consumer Protection Act ("TCPA"), specifically alleging that Resource "blast-faxed" unsolicited mortgage advertisements to customers between March 1998 through March 2002. (Compl. at ¶ 12).

Upon being served with the suit, Resource notified St. Paul of the Indiana Litigation and requested that it provide a defense and indemnify Resource. (Compl. at ¶ 13). On or about June 4, 2002, St. Paul denied coverage, stating that the Policies did not cover the claims made in the Indiana Litigation. (Compl. at ¶ 14). On or about August 7, 2002, a United States District Court for the Middle District of North Carolina issued a summary judgment decision in the case of *Prime TV, LLC v. Travelers Ins. Co.* 223 F.Supp.2d 744 (M.D.N.C.2002), in which it held that materially identical insurance policy terms to the terms in the Policies issued by St. Paul covered the same claims in a lawsuit alleging "blast faxing" in violation of the TCPA. (Compl. at ¶ 15). On June 12, 2003, Resource notified St. Paul of this development and asked for reconsideration, but St. Paul again denied Resource's request for indemnification and defense. (Compl. at ¶¶ 16–17).

On November 4, 2003, Resource filed its Complaint against St. Paul in this action and makes three claims: (1) declaratory judgment from the Court that the Policies afford coverage for the claims made in the Indiana Litigation, and an Order directing St. Paul to honor the terms of the Policies by providing Resource a defense in the Indiana Litigation, indemnifying Resource for any judgment(s) entered in the Indiana Litigation, and reimbursing Resource for all costs, expenses, and attorneys fees incurred in the Indiana Litigation; (2) breach of contract—i.e., St. Paul breached the terms of the Policies by refusing to provide a defense for Resource in the Indiana litigation and by denying coverage for the claims made; and (3) breach of contract seeking attorneys fees—based on St. Paul's alleged bad faith in denying coverage, pursuant to Va.Code Ann. § 38.2–209.

On March 4, 2004, Resource filed a Motion for Partial Summary Judgment. (Document No. 8). On March 15, 2004, St. Paul filed a Motion for Summary Judgment. (Document No. 10) On May 17, 2004, the Court heard argument on these motions.

### B. Policy Terms and Indiana Complaint Allegations

The terms of the Policies and the allegations of the underlying complaint in the Indiana Litigation are critical to the motions because Resource's claims focus on both St. Paul's duty to defend and its duty to indemnify. The parties disagree over whether two of the Policy's provisions, "Advertising Injury Liability" and "Property Damage," afford Resource a defense and indemnification for the events underlying the Indiana Litigation. The Policy provides coverage for "advertising injury liability" as follows:

*Advertising* means attracting the attention of others by any means for the

ment, the court must consider the facts in the light most favorable to each party when considering its opposition to the motions in issue. In this proceeding, the material facts are not in dispute as to the motions decided; however, future developments could impact other rights of the parties.

purpose of seeking customers or increasing sales or business.

. . .

**Advertising injury liability.** We'll pay amounts any protected person is legally required to pay as damages for covered advertising injury that:

- results from the advertising of your products, work, or completed work; and
- is caused by an advertising injury offense committed while this agreement is in effect

*Advertising injury* means injury, other than bodily injury or personal injury, that's caused by an advertising injury offense.

*Advertising injury offense* means any of the following offenses:

- Libel or slander
- Making known to any person or organization written or spoken material that disparages the products, work, or completed work of others.
- Making known to any person or organization written or spoken material that violates a person's right of privacy.
- Unauthorized use of any advertising idea, material, slogan, style, or title of others in your advertising

*See* Document No. 9, Mem. in Supp. of Mot. for Partial Summ. J. ("Partial SJ Memo"), Ex. 1 at 2–3. The Policy also covers "property damage":

**Bodily injury and property damage liability.** We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that:

- happens while this agreement is in effect; and
- is caused by an event.

. . .

*Property damage means:*

- physical damage to tangible property of others, including all resulting loss of use of that property; or
- loss of use of tangible property of others that isn't physically damaged.

*See* Partial SJ Memo, Ex. 1 at 1–2.

Also important to the analysis are the allegations found in the complaint in the Indiana Litigation ("Indiana Complaint"). The relevant sections include:

Congress further noted that fax advertisers took advantage of fax machines by sending advertisements to available fax numbers, knowing the fax would be received and printed by the recipient's machine. Congress found this practice problematic for two (2) reasons: (i) it shifts some of the costs of advertising from the sender to the recipient; and (ii) it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk faxes. (Indiana Complaint at ¶ 4).

\* \* \* \* \* \*

On February 17, 2002, Defendants transmitted by telephone facsimile machine (as defined at 47 U.S.C. § 227(a)(2)) material advertising the commercial availability and quality of property, goods, and services to a facsimile machine owned by Cohen & Malad .... (Indiana Complaint at ¶ 18).

\* \* \* \* \* \*

Cohen & Malad received this facsimile without giving Defendants its prior express invitation or permission to receive such advertising materials, making it a an (sic) unsolicited advertisement, as defined by 47 U.S.C. § 227(a)(4). (Indiana Complaint at ¶ 19).

The TCPA prohibits the facsimile transmission of such unsolicited advertisements, providing: "It shall be unlawful for any person in the United States . . .

to use any telephone facsimile machine ... to send an unsolicited advertisement to a telephone facsimile machine ...." 47 U.S.C. § 227(b)(1)(C). (Indiana Complaint at ¶ 20).

\* \* \* \* \* \*

In the last four years, Defendants have sent similar unsolicited advertisements via facsimile to other individuals and businesses throughout the State of Indiana and the United States. (Indiana Complaint at ¶ 22).

## II. APPLICABLE LAW

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir. 1990). The facts and inferences drawn from the pleadings must be viewed in the light most favorable to the nonmoving party. *Nguyen v. CNA Corp.,* 44 F.3d 234, 237 (4th Cir.1995). Summary judgment is appropriate when the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the plaintiff and defendant dispute the facts of the case, "plaintiff's version of the facts must be presented where the parties' versions conflict, at least to the degree that her allegations have support in affidavits, depositions or other documentary evidence." *Magnuson v. Peak Technical Servs.,* 808 F.Supp. 500, 504 (E.D.Va. 1992) (citations omitted).

In order to successfully defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations and denials contained in the pleadings." *Doyle v. Sentry Ins.,* 877 F.Supp. 1002, 1005 (E.D.Va.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Rather, the nonmoving party must set forth specific facts through affidavits, depositions, interrogatories, or other evidence to show genuine issues for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. When the nonmoving party fails to make a sufficient showing establishing an essential element of his case and he bears the burden of proof on that issue, "there is 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505.

### B. DUTY TO DEFEND

■■■ This action was filed in the Eastern District of Virginia, and Virginia's choice-of-law rules govern what substantive law applies to the insurance Policy in question. *Am. Online, Inc. v. St. Paul Mercury Ins. Co.,* 347 F.3d 89, 92 (4th Cir.2003). Virginia substantive law applies to this action because the insurance contract in this case was formed in Virginia. *Id.* at 92–93 (citing *Buchanan v. Doe,* 246 Va. 67, 431 S.E.2d 289, 291 (1993)). The issue before the Court is whether the Policy covers Resource's alleged violation of the TCPA as stated by Cohen & Malad in the Indiana Complaint. To decide this issue, the Court must construe the CGL Policy. A motion for summary judgment requiring interpretation of an insurance policy is proper "because the construction of insurance contracts is a legal question well suited for resolution by the court." *St. Paul Fire & Marine Ins. Co. v. Jacobson,* 826 F.Supp. 155, 157 (citing *John Deere Ins. Co. v. Shamrock Indus., Inc.,* 929 F.2d 413, 417 (8th Cir.1991)).

"Under Virginia law, an insurer's obligation to defend an action 'depends on comparison of the policy language with the underlying complaint to determine whether any claims alleged [in the complaint] are covered by the policy.'" *Am. Online, Inc.,* 347 F.3d at 93 (quoting *Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.,* 332 F.3d 215, 220 (4th Cir.2003)). Some courts have labeled this analysis the "eight corners rule"—analyzing the four corners of both the insurance policy and underlying complaint. *Erie Ins. Exch. v. State Farm Mut. Auto. Ins. Co.,* 60 Va. Cir. 418, 423 (Va. Cir.2002). "Therefore, the court must decide whether to grant summary judgment by looking at the four corners of the Policy and the ... complaint[ ]." *Superformance Int'l, Inc.,* 203 F.Supp.2d at 592. "[T]he obligation to defend is broader than [the] obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy.'" *Virginia Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co.,* 252 Va. 265, 475 S.E.2d 264, 265 (1996) (quoting *Lerner v. Safeco,* 219 Va. 101, 245 S.E.2d 249, 251 (1978)).

In Virginia, insurance policies are "contracts whose terms are construed in accordance with the general principles applicable to all contracts." *Dairyland Ins. Co. v. Douthat,* 248 Va. 627, 449 S.E.2d 799, 801 (1994). Thus, the clear and unambiguous language of a contract governs its meaning. *See Partnership Umbrella, Inc. v. Federal Ins. Co.,* 260 Va. 123, 530 S.E.2d 154, 160 (2000) ("when the language in an insurance policy is clear and unambiguous, courts do not employ rules of construction; rather, they give the language its plain and ordinary meaning and enforce the policy as written."). "[W]here there is ambiguity in the terms of an insurance policy, they should be liberally construed in favor of the insured and against the drafter of the policy; but

this does not mean that a strained or unjustified construction of the policy is to be adopted, which disregards the plain meaning and intent of the parties....'" *First Am. Title Ins. Co. v. Seaboard Sav. & Loan Ass'n,* 227 Va. 379, 315 S.E.2d 842, 845 (1984) (quoting *Quesenberry v. Nichols & Erie,* 208 Va. 667, 159 S.E.2d 636, 640 (1968)). Moreover, a contract is not ambiguous merely because parties disagree as to the meaning of the terms used. *Eure v. Norfolk Shipbuilding & Drydock Corp.,* 263 Va. 624, 561 S.E.2d 663, 668 (2002).

When deciding a coverage dispute, courts should construe the terms of the policy in light of its subject matter, and the policy's words and phrases "should be given their natural and ordinary meaning as understood in the business world." *Solers, Inc. v. Hartford Cas. Ins. Co.,* 146 F.Supp.2d 785, 789 (E.D.Va.2001). Moreover, the contract should be read "as a single document, the meaning of which is gathered from all its associated parts when assembled as the unitary expression of the agreement of the parties." *First Am. Title Ins. Co.,* 315 S.E.2d at 845. Taking into account all of these principles of contract interpretation, "[t]he insurer is relieved of a duty to defend only when it clearly appears from the initial pleading the insurer would not be liable under the policy contract for any judgment based upon the allegations." *Reisen v. Aetna Life & Cas. Co.,* 225 Va. 327, 302 S.E.2d 529, 531 (1983).

### III. ANALYSIS

#### A. ADVERTISING INJURY

The first issue before the Court is Resource's claim that the Policy provisions covering "Advertising Injury" cover the TCPA claims made by Cohen & Malad in the Indiana Litigation. St. Paul does not contest that the facsimile attached to the

Indiana Complaint "advertised" Resource's "products" and/or "work." Thus, the inquiry becomes whether Resource's alleged violation of the TCPA, found in the Indiana Complaint, constitutes an "advertising injury offense." The Policy states:

*Advertising* means attracting the attention of others by any means for the purpose of seeking customers or increasing sales or business.

. . .

*Advertising injury offense* means any of the following offenses:

- Libel or slander
- Making known to any person or organization written or spoken material that disparages the products, work, or completed work of others.
- Making known to any person or organization written or spoken material that *violates a person's right of privacy.*
- Unauthorized use of any advertising idea, material, slogan, style, or title of others in your advertising

*See* Partial SJ Memo, Ex. 1 at 3 (emphasis added).

Resource contends that the Policy's Advertising Injury provisions cover the TCPA claims made in the Indiana Complaint. In support of its position, Resource relies heavily on the legislative history and executive signing statement of the TCPA. In *Intl. Sci. & Tech. Inst. v. Inacom Communs., Inc.*, the Fourth Circuit explained: "The TCPA was enacted to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile (fax) machines and automatic dialers." 106 F.3d 1146, 1150 (4th Cir. 1997) (citation omitted). In enacting the TCPA, Congress found that, "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy." *TIG Ins. Co. v. Dallas Basketball, Ltd.*, No. 05–03–00134–CV,

2004 WL 243773, 2004 Tex.App. LEXIS 1243, (Tex.Ct.App. Feb. 11, 2004) (quoting H.R.Rep. No. 102–317 at 2 (1991)).

Additionally, Resource relies on nine decisions dating back to August 2002, in which courts have found that (i) the TCPA exists to protect privacy interests, and thus (ii) claims alleging violations of its provisions by sending unsolicited facsimiles trigger coverage that is available for invasions of the right to privacy. *See, e.g., Park Univ. Enterprises, Inc. v. Am. Cas. Co. of Reading, PA.*, 314 F.Supp.2d 1094 (D.Kan.2004); *Registry Dallas Assocs. v. Wausau Bus. Ins. Co.*, 2004 WL 614836 (N.D.Tex. Feb.26, 2004); *TIG Ins. Co. v. Dallas Basketball, Ltd.; Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 300 F.Supp.2d 888 (E.D.Mo. 2004); *Am. States Ins. Co. v. Capital Assocs. of Jackson County, Inc.*, Docket No. 02–00975–DRH, 2003 WL 23278656 (S.D.Ill.Dec.9, 2003); *Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, 272 F.Supp.2d 1365 (S.D.Ga.2003); *Western Rim Inv. Advisors, Inc. v. Gulf Ins. Co.*, 269 F.Supp.2d 836 (N.D.Tex.2003); *Merchant's & Businessmen's Mut. Ins. Co. v. A.P.O. Health Co., Inc.*, 228 N.Y. L.J. 22 (N.Y.Sup.Ct. Aug. 29, 2002); *Prime TV, LLC v. Travelers Ins. Co.*, 223 F.Supp.2d 744 (M.D.N.C. 2002).

Resource claims that *Prime TV, LLC* is illustrative of the cases deciding the issues before the Court. The insured was sued for allegedly violating the TCPA after it faxed an advertisement to millions of potential customers. *Prime TV, LLC*, 223 F.Supp.2d at 747. The district court held that the insured's actions caused an advertising injury as defined by the insurer's policies, and further, "[t]he underlying actions seek redress for the invasion of privacy rights (as well as the loss of use of property) under the TCPA." *Id.* at 752. In making its decision, the District Court also

relied upon the Fourth Circuit's quotation of legislative history in *Intl. Sci. & Tech. Inst., Inc.*, 106 F.3d at 1150. *Id.* at 753.

In response to Resource's claims, St. Paul attempts to distinguish the case at bar from the prior decisions when courts were faced with insurance coverage issues involving underlying TCPA claims. First, St. Paul contends that the other decisions involved different policy language than the Policy language relevant in the case at bar. More importantly, St. Paul argues that prior court decisions "have been superficial in their analysis." *See* Def.'s Mem. in Opp'n to Pl.'s Mot. for Partial Summ. J. at 4.

St. Paul first argues that the Indiana Complaint does not allege a privacy claim, and thus, applying the eight-corners rule, there is no coverage under the Policy. The Court is persuaded that the Indiana Complaint does allege a privacy claim when it alleges a violation of the TCPA. The Indiana Complaint contains several references to the TCPA, *see* Indiana Complaint at ¶¶ 2–3, 16(iii), and Congress' intention for the TCPA to prohibit unsolicited faxes and advertisements. *Id.* at ¶¶ 2, 19–20. The Indiana Complaint further alleges that Cohen & Malad, and other individuals and businesses, received these unsolicited facsimile advertisements in violation of the TCPA. *Id.* at ¶¶ 1, 19–20, 22. In light of the Fourth Circuit's clear statement in *Intl. Sci. & Tech. Inst., Inc.* that the purpose of the TCPA was to protect privacy interests, the allegations in the Indiana Complaint assert a privacy claim against Resource. 106 F.3d 1146, 1150 ("The TCPA was enacted to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile (fax) machines and automatic dialers.").

Next, St. Paul asserts that Cohen & Malad failed to allege that Resource "made known to any person or organization oral or written material," as required by the Policy. More specifically, St. Paul argues that Resource never made known information about Cohen & Malad to any third-party. St. Paul maintains that the language and structure of the policy require that the material be made known to a third person, a person other than the one whose privacy has allegedly been violated. The Court disagrees with St. Paul's reading of the Policy. A plain reading of the Policy requires that the making known be made to *any* person, not necessarily a third-party. In this case, Resource made known to Cohen & Malad, information about its business.

St. Paul's "making known to a third person" argument assumes that only actions constituting the tort of "invasion of privacy" violate a "person's right of privacy" as covered by the Policy. *See MGM Inc. v. Liberty Mut. Ins. Co.*, 253 Kan. 198, 855 P.2d 77 (1993) (holding that there was no publication in violation of an individual's right to privacy when the content of recorded telephone calls was not disclosed to others); *State Farm Fire & Cas. Co. v. Compupay*, 654 So.2d 944 (Fla.Ct.App. 1995) (in order to invoke coverage, claims involving invasion of privacy require allegations and proof of publication to a third person). However, "invasion of privacy" is a legal term of art. The phrase "invasion of privacy" is not used in the advertising injury section of the Policy and the Policy's "right of privacy" is not defined narrowly to include only actions which might constitute the tort of invasion of privacy. For these reasons, the Court rejects St. Paul's claim that information must be made known to a third person.

St. Paul next claims that the Indiana Complaint fails to allege an adver-

tising injury because it is the content of the advertisement, not the advertisement itself, must violate a person's right to privacy for coverage to exist. This exact position was considered and rejected by the courts in *Western Rim, TIG Ins. Co., Park Univ. Enterprises, Inc.*, and *Registry Dallas Assocs., L.P.* In *Western Rim,* the Court agreed with the insured "that the *unwanted advertisement,* regardless of what it specifically advertises, is the *material* that is offensive and violative of their right of privacy." 269 F.Supp.2d at 847 (emphasis in original). The *Western Rim* court based its decision on Congress' intent to protect individuals from receiving unsolicited faxed advertisements. *Id.* The Texas Court of Appeals reached a similar conclusion in *TIG Ins. Co.*, where the court concluded, "But for the fact that the transmission contained advertising, the plaintiffs would not have been able to make claims under the Act ... [which] presumes all advertising, so long as it is unsolicited, is an offensive intrusion into the recipient's solitude." *TIG Ins. Co.*, 2004 WL 243773, 2004 Tex.App. LEXIS 1243 at *11; *see also Park Univ. Enterprises, Inc.*, 314 F.Supp.2d at 1109 (finding that all advertising via unsolicited facsimile constitutes "material"); *Registry Dallas Assocs., L.P.*, 2004 WL 614836 at *6 (same). In the case at bar, the "material" in question is the advertisement that Resource sent to Cohen & Malad via facsimile.

██ St. Paul's final argument with respect to the advertising injury provisions is that Cohen & Malad, as a limited liability partnership, cannot assert a violation of a "person's" right of privacy. The Policy provides coverage for "making known to any *person* or *organization* written or spoken material that violates a *person's* right of privacy." (emphasis added). To the Court's knowledge, this is the first case involving a coverage dispute under the TCPA in which "person" must be interpreted in relation to "organization." St.

Paul concedes that the Policy does not define "person"; however, St. Paul argues that it is clear in reading the Policy as a whole that "person" and "organization" are two separate and distinct terms, with the term "organization" referring to legal entities such as partnerships and corporations, including Cohen & Malad.

██ The Court is not persuaded by St. Paul's argument on this issue. Because "person" is not defined by the Policy, there are multiple interpretations of the Policy language cited by St. Paul. One interpretation is that offered by St. Paul—i.e., "person" describes natural persons, while "organization" describes legal entities such as limited liability corporations. An alternative, and equally plausible interpretation, is one that defines "person" to include all persons with legal rights—including natural persons and corporate entities organized under the law—and "organization" to include entities not organized under the law and without legal rights such as unincorporated associations. Despite St. Paul's argument to the contrary, the Policy language is ambiguous. Under Virginia law, "where there is ambiguity in the terms of an insurance policy, they should be liberally construed in favor of the insured and against the drafter of the policy ...." *First Am. Title Ins. Co.*, 315 S.E.2d at 845 (quoting *Quesenberry*, 159 S.E.2d at 640). This is consistent with the decision in *Hooters of Augusta, Inc.*, where the district court found that the policy's undefined term "person" was ambiguous. 272 F.Supp.2d 1365, 1374, n. 7 ("... the term 'person' in the policy is ambiguous. In Georgia, for instance, the term 'person' includes a corporation.") (citing O.C.G.A. § 1–3–3(14) (Supp.2000)). The Court agrees with the *Hooters of Augusta, Inc.* court that "person" is ambiguous, even when used in a Policy provision also containing "organization." The Court must

give the Policy's words "their natural and ordinary meaning as understood in the business world," *Solers, Inc.,* 146 F.Supp.2d at 789, and thus, "person" includes natural persons and organized entities with legal rights under the law. Therefore, Cohen & Malad, a limited liability partnership organized under the laws of the State of Indiana, is a "person" within the meaning of the Policy.

■ For the reasons discussed here, the Court **FINDS** that Cohen & Malad alleged an "advertising injury" as defined by the Policy. The Court **GRANTS** Resource's Motion for Partial Summary Judgment as to St. Paul's duty to defend Resource in the Indiana Litigation, but **TAKES UNDER ADVISEMENT** Resource's motion as it relates to indemnification. As discussed previously, the obligation to defend is broader than the obligation to indemnify. *Virginia Elec. & Power Co.,* 475 S.E.2d at 265. "The obligation to defend arises whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy." *Brenner v. Lawyers Title Ins. Corp.,* 240 Va. 185, 397 S.E.2d 100, 102 (1990). In the case at bar, St. Paul is obligated to defend Resource because Cohen & Malad's allegations fall within the Advertising Injury provision, regardless of the Court's decision as to coverage under the Property Damage provision. The Court also **DENIES** St. Paul's Cross–Motion for Summary Judgment on the issue of defense under the Advertising Injury provision, and **TAKES UNDER ADVISEMENT** St. Paul's motion as it relates to indemnification under such coverage.

## B. PROPERTY DAMAGE

■ In addition to its claim under the Advertising Injury provision of the Policy, Resource makes a claim for defense and

coverage pursuant to the Bodily Injury and Property Damage provision of the Policy. *See* Partial SJ Memo, Ex. 1 at 1–3. This Policy section provides coverage for (1) physical damages to property; or (2) loss of use of tangible property that is not physically present. Partial SJ Memo, Ex. 1 at 2. The relevant policy language for property damage states:

**Bodily injury and property damage liability.** We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that:

● happens while this agreement is in effect; and

● is caused by an event.

. . .

*Property damage means:*

● physical damage to tangible property of others, including all resulting loss of use of that property; or

● loss of use of tangible property of others that isn't physically damaged.

*Id.*

Again, Resource relies upon *Prime TV, LLC,* where the District Court observed that legislative history of the TCPA identified property damage as one of the problems associated with unsolicited facsimile advertising:

First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax ... The recipient assumes both the cost associated with the use of the facsimile machine, and the cost of the expensive paper used to print out facsimile messages.

*Prime TV, LLC,* 223 F.Supp.2d at 750 (quoting *Destination Ventures, Ltd. v. FCC,* 844 F.Supp. 632, 636 (D.Ore.1994)).

The Court further noted that "as a result of the DirecTV facsimiles, the recipients lost the use of their fax machines as well as permanent loss of facsimile paper and ink." *Prime TV, LLC,* 223 F.Supp.2d at 750. The District Court's holding in *Prime TV, LLC* mirrors Cohen & Malad's allegations in the Indiana Complaint. Specifically, Cohen & Malad alleges:

> Congress further noted that fax advertisers took advantage of fax machines by sending advertisements to available fax numbers, knowing the fax would be received and printed by the recipient's machine. Congress found this practice problematic for two (2) reasons: (i) it shifts some of the costs of advertising from the sender to the recipient; and (ii) it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk faxes.

Indiana Complaint at ¶ 4.

Resource contends that the circumstances underlying Cohen & Malad's complaint satisfy the property damage section of the Policy. First, Resource argues that Cohen & Malad alleged "property damage" in the Indiana Complaint. Under Resource's interpretation, the complaint alleges the physical damage and loss of tangible property (i.e., facsimile ink and paper), as well as loss of use of tangible property (i.e., facsimile machine while Resource's facsimile was being received). Second, Resource contends that the Indiana Complaint alleges that the "property damage" occurred as a result of an "event"—i.e., the accidental transmission of facsimiles to persons whom Resource believed had requested the faxes. In support of its position, Resource cites to *Prime TV* and *Park Univ. Enterprises, Inc.,* in which both courts found negligent facsimile transmission of unsolicited advertisement to be an "occurrence" within the meaning of the policies. *Prime TV,* 223 F.Supp.2d at 751–52; *Park Univ. Enter-*

*prises, Inc.,* 314 F.Supp.2d at 1108. Resource further argues that nothing in the Indiana Complaint suggests that its actions were willful or intentional, and thus, subject to exclusion under the Policy. Rather, Virginia law requires the insurer to defend "whenever the complaint against the insured alleges facts and circumstances, some of which, if proved would fall within the risk covered by the policy." *Brenner,* 397 S.E.2d at 102. Accordingly, Resource believes that the Indiana Complaint clearly stated a claim for which St. Paul owed it a duty to defend.

■ The Court assumes, without deciding, that Cohen & Malad alleged "property damage" as it is defined in the Policy—e.g., loss of facsimile toner and paper, and loss of use of the facsimile machine. However, the Court does not agree with Resource's argument that the property damage alleged was caused by an "event." The Policy defines "event" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See* Partial SJ Memo, Ex. 1 at 2. Three basic principles of Virginia insurance law guide the Court in deciding the issue of whether the property damage in question was caused by an "event" (i.e., accident). First, the term "accident" refers to "an incident that was unexpected from the viewpoint of the insured." *Utica Mut. Ins. Co. v. Travelers Indem. Co.,* 223 Va. 145, 286 S.E.2d 225, 226 (1982). Second, intentional acts are not "accidents," so allegations based on such conduct are not covered by an insurance policy. *Id.* Third, Virginia applies the Natural and Probable Consequences Test, which states that an "accident" is an "event which creates an effect which is not the natural or probable consequence of the means employed and is not intended, designed, or reasonably anticipated." *Lynchburg Foundry Co. v. Irvin,* 178 Va. 265, 16 S.E.2d 646, 648 (1941).

In the case at bar, if the alleged property damage is the loss of facsimile toner and paper and loss of use of the facsimile machine, then the transmission of the fax must be the "event" that caused the loss, if the Court is to find coverage under the Policy. However, Resource's transmission of the facsimile to Cohen & Malad was not an "event" because it was not an accident. The facsimile transmission was not unexpected. In fact, Resource alleges that it intended to transmit the facsimile, but made a mistake by including Cohen & Malad on the recipient list prior to facsimile transmission. Resource's alleged mistake in placing Cohen & Malad on the recipient list did not cause facsimile toner and paper consumption or the loss of use of the facsimile machine. The intentional transmission of the facsimile advertisement caused this alleged property damage. Moreover, Resource cannot argue that its transmission of the facsimile was an "event which creates an effect which is not the natural or probable consequence of the means employed and is not intended, designed, or reasonably anticipated." *See Lynchburg Foundry Co.,* 16 S.E.2d at 648. An entity that transmits a facsimile message to a recipient necessarily expects the recipient's machine to print the message, which involves the use of facsimile paper and toner and the temporary loss of use of the recipient's facsimile machine.

For these reasons, the Court **FINDS** that the alleged property damage was not caused by an "event" (i.e., accident), and therefore, St. Paul has no duty to defend or indemnify Resource on this basis. The Court **DENIES** Resource's Motion for Partial Summary Judgment, and **GRANTS** St. Paul's Motion for Summary Judgment, as they relate to defense and indemnification under the Policy's property damage provision.

## C. BAD FAITH CLAIM

The next issue before the Court is St. Paul's Motion for Summary Judgment on Count III, which alleges Breach of Contract in Bad Faith. (Compl. at ¶¶ 26–29). Based on the evidence before the Court at this time, the Court **FINDS** that the coverage issues disputed by the parties are fairly debatable. Unless Resource can provide the Court with sufficient evidence of St. Paul's bad faith by the end of the discovery period, the Court will grant St. Paul's motion on this claim. Both parties are **ADVISED** to submit briefs on this issue within five (5) days of the discovery deadline if they wish the Court to reconsider its position. The parties may communicate, formally or informally, with the Court on that issue. The Court **TAKES UNDER ADVISEMENT** St. Paul's Motion for Summary Judgment on Count III.

## D. FINAL JUDGMENT PURSUANT TO RULE 54(b)

The final issue before the Court is the parties' request that the Court make an express determination that there is no just reason for delay and direct entry of a final judgment in favor of Resource and against St. Paul on the issue of St. Paul's duty to defend, pursuant to Rule 54(b) of the FEDERAL RULES OF CIVIL PROCEDURE. It is well-settled that the Fourth Circuit disfavors certification of a judgment as to a claim or party in a multi-claim or multi-party suit. *Bell Microproducts, Inc. v. Global–Insync, Inc.,* 20 F.Supp.2d 938, 942 (E.D.Va.1998). If a district court chooses to certify a judgment as to a claim or party, it must make express findings on the record or in its order. *Id.* at 943. First, the district court must determine whether the judgment is final—i.e., whether it disposes of an individual claim in a multi-claim action. *Braswell Shipyards v. Beazer E., Inc.,* 2 F.3d 1331, 1335 (4th Cir.1993). Second, the district court must

find that there is no just reason for delay. FED. R. CIV. P. 54(b).

In the case at bar, the Court **FINDS** that both Rule 54(b) elements are satisfied. First, the Court **FINDS** that the judgment is final as to Resource's claim that St. Paul breached its duty to defend in the Indiana Litigation. The Court has determined that St. Paul owes Resource a defense based on the Advertising Injury provision of the Policy. Second, the Court **FINDS** that there is no just reason for delay. In making this finding, the Court believes that judicial economy would be served by allowing certification at this time. For example, a Circuit Court decision reversing this Court's finding of a duty to defend on the basis of the Advertising Injury provision would end this coverage case.[2] (e.g., mooting indemnification and breach of contract in bad faith). A Circuit Court decision finding that Resource is entitled to coverage under either the Advertising Injury or Property Damage provision will result in Resource being furnished a defense in the Indiana Litigation. The issue of indemnity cannot be resolved by this Court or on appeal unless and until there is a recovery by the plaintiff in the Indiana Litigation and the theory of recovery is tested against the available coverage. A finding in favor of Resource in the Indiana Litigation will moot the indemnification issue.

Accordingly, this Court **STAYS** further proceedings on the separate claims of indemnity and bad faith pending consideration of an appeal of this Order by the United States Court of Appeals for the Fourth Circuit.

## IV. CONCLUSION

The Court **GRANTS** Resource's Motion for Partial Summary Judgment as to St. Paul's duty to defend Resource pursuant to the Advertising Injury coverage in the Indiana Litigation, but **TAKES UNDER ADVISEMENT** Resource's motion as it relates to indemnification under such coverage. The Court **DENIES** St. Paul's Motion for Partial Summary Judgment on the issue of defense under the Advertising Injury provision and **TAKES UNDER ADVISEMENT** St. Paul's motion as it relates to indemnification under such provision. The Court **DENIES** Resource's Motion for Partial Summary Judgment, and **GRANTS** St. Paul's Motion for Partial Summary Judgment, as these motions relate to defense and indemnification under the Policy's property damage provision. The Court **TAKES UNDER ADVISEMENT** St. Paul's Bad Faith Claim in Count III.

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court **FINDS** that its rulings as to the separate duty of defense under the Policy are final and that there is no just reason for delay, and **ORDERS** that its decisions granting and denying the Cross–Motions for Summary Judgment be entered as a final judgment pursuant to Rule 54(b). The separate claims for indemnity and bad faith are **STAYED** pending consideration of an appeal of this Order by the United States Court of Appeals for the Fourth Circuit.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record and the Clerk of the Circuit Court of Appeals for the Fourth Circuit.

It is so **ORDERED**.

---

**2.** Unless the Court also found there was a duty to defend under the Property Damage provision.