UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-1930

FEDERAL HILL HOMEOWNERS ASSOCIATION, INC.,

Plaintiff - Appellant,

v.

COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC.; QBE
INSURANCE CORPORATION,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.    Leonie M. Brinkema,
District Judge. (1:09-cv-00251-LMB-TRJ)

Argued: May 12, 2010                    Decided: June 21, 2010

Before GREGORY, Circuit Judge, C. Arlen BEAM, Senior Circuit
Judge of the United States Court of Appeals for the Eighth
Circuit, sitting by designation, and Samuel G. WILSON, United
States District Judge for the Western District of Virginia,
sitting by designation.

Reversed and remanded by unpublished opinion.   Judge Gregory
wrote the majority opinion, in which Judge Wilson joined.
Senior Judge Beam wrote a dissenting opinion.

**ARGUED:** Mark Patrick Graham, REES BROOME, PC, Vienna, Virginia,
for Appellant.  Lawrence Alexis Dunn, MORRIS & MORRIS, Richmond,
Virginia, for Appellees.  **ON BRIEF:** Maureen E. Carr, REES

BROOME, PC, Vienna, Virginia, for Appellant.  Sandra S. Gregor, MORRIS & MORRIS, Richmond, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

On July 24, 2009, the United States District Court for the Eastern District of Virginia granted summary judgment to defendants QBE Insurance Corporation ("QBE") and Community Association Underwriters of America, Inc. after finding they had no duty to defend Federal Hill Homeowners Association, Inc. ("FHHA") from a state suit brought by a property owner. The court found that the insurance policy at issue did not provide coverage for the allegations of "bodily injury" in the suit because they were not caused by a requisite "occurrence." For the reasons set forth below, we reverse the decision of the district court and remand for further proceedings consistent with this decision.

I.

QBE through its managing agent Community Association Underwriters of America, Inc., issued an insurance policy to FHHA for the policy period January 14, 2006, to January 14, 2007 ("the Policy"). Under the General Liability section of the Policy, coverage is provided for claimed damages of "bodily injury," "property damage," "personal injury," or "advertising

3

injury" "to which this insurance applies." J.A. 77.[1] QBE has the right and duty to defend any "suit" seeking those damages. Significantly, the Policy only applies to "bodily injury" or "property damage" which is caused by an "occurrence" taking place during the policy period. Id. "Bodily injury" is defined as an "injury to the body, sickness or disease, disability of shock, mental anguish, humiliation or mental injury sustained to any person, including death resulting from any of these at any time." Id. at 105. An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same harmful conditions." Id. at 111. Furthermore, "bodily injury" or "property damage" expected or intended from the standpoint of the insured is excluded from the General Liability section of the Policy pursuant to Exclusion E. Id. at 79.

On August 13, 2007, FHHA requested that the defendants provide coverage pursuant to the Policy based on the lawsuit of Jayne Hornstein v. Federal Hill Homeowners Association, Inc., Case No. CL-2007-9459 (Fairfax Cir. Ct.) ("the Hornstein Lawsuit"). In the Hornstein Lawsuit, the plaintiff, owner of real property that is part of FHHA, alleged that she could not sell the property because of information contained in a

---

[1] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

4

disclosure packet issued by FHHA on or around February 2006 ("the Disclosure Packet"). The Disclosure Packet, provided upon Hornstein's request,[2] stated that the property was in violation of FHHA's rules and regulations. Among the violations, the Disclosure Packet stated that the property's fence encroached on FHHA's property. Based on the Disclosure Packet, Hornstein specifically alleged four causes of action against FHHA: (1) Declaratory Judgment; (2) Injunctive Relief; (3) Disparagement of Property/Slander of Title; and (4) Tortious Interference. Id. at 207-09. Included in the damages Hornstein alleged in her Slander of Title claim are "the lost economic benefits of the sale of the Property," "the diminution in fair market value of the Property," and "the mental and emotional pain and anguish suffered by Hornstein as a result of the stress and financial hardships caused by not being able to sell the Property." Id. at 208.

The defendants acknowledged receipt of FHHA's claim under the Policy and denied coverage on August 14, 2007. The defendants denied coverage under both the General Liability

---

[2] Virginia law requires a property owners' association to furnish an "association disclosure packet" upon the request of an owner who is selling property within the association. Va. Code Ann. § 55-509.5 (2009). The packet must include whether any improvements on, alterations of, or use of the property violate any association rules and regulations. Id.

5

section of the Policy and the Directors and Officers Liability section. While FHHA conceded no coverage under the Directors and Officers Liability section, it brought a declaratory judgment action against defendants on February 2, 2009, alleging, in part, that the defendants failed to provide coverage to FHHA related to the Hornstein Lawsuit according to the General Liability section. On June 17, 2009, FHHA filed a motion for summary judgment against the defendants seeking judgment as a matter of law on its breach of duty to defend claim. The defendants both opposed FHHA's motion and filed their own summary judgment motion asserting lack of coverage.

The district court granted summary judgment to the defendants on July 24, 2009. The court found that, comparing the Hornstein Lawsuit with the Policy as required under Virginia law, the Policy did not provide coverage for the allegations of "bodily injury" in the Hornstein Lawsuit, mental anguish, because there was no requisite "occurrence." Id. at 270-71. FHHA timely appealed.

II.

This Court reviews the district court's grant of summary judgment de novo, "viewing the facts in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Garofolo v. Donald B. Heslep Assocs., Inc.,

405 F.3d 194, 198 (4th Cir. 2005).  If there is a genuine issue of material fact or if the moving party is not entitled to judgment as a matter of law on this record, then summary judgment is inappropriate.  Fed. R. Civ. P. 56(c); see also Celotex v. Catrett, 477 U.S. 317, 322 (1986).

# III.

FHHA contends that the district court erred in finding that the alleged "bodily injury" in the Hornstein Lawsuit was not caused by an "occurrence," as defined by the Policy. Specifically, FHHA argues that the mental and emotional pain and anguish suffered by Hornstein was not a reasonably foreseeable result of the issuance of the Disclosure Packet.  We agree.

## A.

"A federal court hearing a diversity claim must apply the choice-of-law rules of the state in which it sits."  Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005).  Here, the appeal arises from a declaratory judgment action filed in the Eastern District of Virginia, and we apply Virginia's choice-of-law rules.  It is undisputed that Virginia law governs.

"Under Virginia law, an insurer's obligation to defend an action 'depends on comparison of the policy language with the underlying complaint to determine whether any claims alleged [in

the complaint] are covered by the policy.'" America Online, Inc. v. St. Paul Mercury Ins. Co., 347 F.3d 89, 93 (4th Cir. 2003) (quoting Superformance Int'l, Inc. v. Hartford Cas. Ins. Co., 332 F.3d 215, 220 (4th Cir. 2003)) (alteration in the original). This is referred to as the "eight corners rule." Erie Ins. Exch. v. State Farm Mut. Auto. Ins. Co., 2002 WL 32075410, at *5 (Va. Cir. Ct. Dec. 16, 2002). The insured has the burden to prove coverage, Res. Bankshares Corp., 407 F.3d at 636, while "the insurer bears the burden of proving that an exclusion applies," Bohreer v. Erie Ins. Group, 475 F. Supp. 2d 578, 585 (E.D. Va. 2007).

When following the eight corners rule, we must recognize that "[t]he duty to defend is broader than the duty to indemnify because it 'arises whenever the complaint alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy.'" Res. Bankshares Corp., 407 F.3d at 636 (quoting Brenner v. Lawyers Title Ins. Corp., 397 S.E.2d 100, 102 (Va. 1990)). "[I]f it is doubtful whether the case alleged is covered by the policy, the refusal of the insurer to defend is at its own risk." Brenner, 397 S.E.2d at 102. "And, if it be shown subsequently upon development of the facts that the claim is covered by the policy, the insurer necessarily is liable for breach of its covenant to defend." Id.

8

In Virginia, "an insurance policy is a contract to be construed in accordance with the principles applicable to all contracts." Seabulk Offshore, Ltd. v. American Home Assur. Co., 377 F.3d 408, 419 (4th Cir. 2004). Accordingly, "[u]nder Virginia law, if policy language is clear and unambiguous, we do not apply rules of construction; rather, we give the language its plain and ordinary meaning and enforce the policy as written." Id. If we find ambiguity "and the intentions of the parties cannot be ascertained, the policy must be construed strictly against the insurer and liberally in favor of the insured." Id.; see also Ocean Acc. & Guarantee Corp., Ltd., of London, England, v. Washington Brick & Terra Cotta Co., 139 S.E. 513, 513 (Va. 1927) ("It is a well recognized rule that insurance policies, in case of doubt, should be construed most strongly against the insurer.").

## B.

All parties agree that the Hornstein Lawsuit's allegations of "mental and emotional pain and anguish" fall within the "bodily injury" requirement of the Policy. Thus, the only issue before this Court is whether there was an "occurrence" under the Policy.[3] The Policy defines "occurrence" as an "accident."

---

[3] The district court did not address the applicability of Exclusion E. However, our analysis under the exclusion would be identical to our determination of whether there was an (Continued)

9

Virginia courts have expounded on this definition, holding in the insurance context that an "occurrence" means "an incident that was unexpected from the viewpoint of the insured," Utica Mut. Ins. Co. v. Travelers Indem. Co., 286 S.E.2d 225, 226 (Va. 1982), or "an event which creates an effect which is not the natural or probable consequence of the means employed and is not intended, designed, or reasonably anticipated," Lynchburg Foundry Co. v. Irvin, 16 S.E.2d 646, 648 (Va. 1941). This Court has found that to determine whether something is an accident under an insurance policy, Virginia courts ask "whether the incident or injury was a reasonably foreseeable result of the insured's actions." Res. Bankshares Corp., 407 F.3d at 637.

The district court in this case found no allegations of an accident under Virginia law. The court's justification reads:

> The problem you have here is I think it is not at all unforeseeable that if a homeowners association or any entity sends a communication to someone indicating that there may be a cloud on the title to their property or an encumbrance, in this case, you know, your fence encroaches, so you're going to have to do something, all right, it's not unreasonable or unforeseeable to anticipate that this is going to

occurrence under the Policy. Both inquiries turn on foreseeability, as the exclusion provides that the Policy does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the insured. J.A. 79. Thus, because we find that the mental anguish alleged was not reasonably foreseeable, there was an occurrence, and Exclusion E does not apply.

10

upset the homeowner, because they're going to have to put out money or it holds up a sale, and apparently in the context of this case, that's why the letter was even generated, so that I don't think the mental anguish resulting from the communication is unforeseeable, and therefore – I'm ruling, all right? – and therefore, that would not be covered by this insurance policy. In other words, that claim for mental anguish I don't find would transform this intentional act to an accident that would therefore be covered.

J.A. 270-71. We hold that the district court erroneously concluded that Hornstein's alleged "mental and emotional pain and anguish" was a "reasonably foreseeable result of [FHHA's] actions." Res. Bankshares Corp., 407 F.3d at 637. To determine foreseeability, we ask whether the result, "was a natural and probable consequence" of the insured's actions. Patch v. Metro. Life Ins. Co., Inc., 733 F.2d 302, 304 (4th Cir. 1984). The alleged mental anguish was not a "natural and probable consequence" of FHHA's issuance of the Disclosure Packet for several reasons.

First, FHHA being sued for mental anguish cannot be a natural and probable consequence of the issuance of the Disclosure Packet containing violations of the association's rules and regulations when the violations cited could have been easily cured. Before bringing suit, according to the Complaint, FHHA informed Hornstein that to bring her property into compliance, all she had to do was "remove the existing fence and gate" and "erect a new fence on the Property where one has not

11

previously been built." J.A. 206. The Record makes clear that Hornstein was informed of the required action more than once. Id. at 221, 226-27. Instead of taking this action, she decided to sue FHHA. It is not reasonable to expect that informing a property owner of straight-forward steps to bring her property into compliance with association policy, essentially performing the job a homeowners' association is obligated to do, would cause the property owner to experience mental anguish to the extent compensable at law. The Hornstein Lawsuit alleges that the mental anguish was caused by not being able to sell the property. However, the Record shows that FHHA timely communicated with her about the status of the violations and how they were to be corrected. Any extended period of time when Hornstein was not able to sell the property was a result of her legal wrangling, not the action of FHHA.

Second, the alleged mental anguish is not a natural and probable consequence because Hornstein was informed that the Disclosure Packet would be issued and that it would contain the core noncompliance in dispute — the fence encroachment — in the event that she attempted to sell the property. In a letter dated more than a month before the Disclosure Packet was issued, FHHA informed Hornstein of the fence encroachment "and that the circumstances of the encroachment of the existing fence must be included on any disclosure." Id. at 211. After Hornstein

12

entered into a contract to sell the property without remedying the violations, FHHA issued the Disclosure Packet, following the course of action it had already set out. The issuance of the Disclosure Packet and its contents therefore were not a surprise to Hornstein. In fact, a survey Hornstein herself commissioned put Hornstein on notice that the fence at issue was off her property. FHHA knew that Hornstein was aware of this survey because she submitted it to FHHA, an action which caused the issuance of the letter mentioned above. Id. ("Your application to make repairs to the fence as indicated on the attached house location survey had been denied. As shown on the survey, included with your application, your current fence encapsulates property that belongs to Federal Hill Homeowner Association."). It thus was not reasonably foreseeable that Hornstein would suffer compensable mental anguish from receiving requested information with which she was already intimately familiar.

Moreover, Hornstein set in motion the issuance of the Disclosure Packet, and FHHA's course of action was required by state law. See Va. Code Ann. § 55-509.5. The violation stated in the required Disclosure Packet was not extraordinary, and there is no doubt that the association is frequently confronted with such situations when property owners wish to sell their property; in other words, FHHA was simply doing its job. FHHA surely could not reasonably foresee a suit alleging mental

13

anguish as a damage based on fulfilling both its legal obligation and its role as a homeowners' association.

Finally, a review of the Complaint reveals that Hornstein was simply asserting mental anguish as a damage under her claim for "slander of title," it being necessary to demonstrate "special damages" to prove slander of title under Virginia law. Warren v. Bank of Marion, 618 F. Supp. 317, 320 (W.D. Va. 1985) ("It is generally recognized that in bringing an action for slander of title the plaintiff must prove that the defendant maliciously published false words, which disparaged plaintiff's property causing plaintiff to suffer special damages."). Courts from other jurisdictions have held that an injured party can only recover for pecuniary loss for slander of title. See James O. Pearson, Jr., Annotation, What Constitutes Special Damages in Action for Slander of Title, 4 A.L.R. 4th 532 (1981 & 1991 Supp.). General damages, such as mental anguish, are not within the range of special damages. Id. at 536-37; see also Lawson v. Valley Mortgage & Inv. Corp., 1987 WL 488637, at *2 (Va. Cir. Ct. Apr. 21, 1987). Thus, we cannot say that it is reasonably foreseeable that FHHA would be sued for a damage that is not recoverable in the first place.

14

IV.

Because we find that "mental and emotional pain and anguish" alleged in the Hornstein Lawsuit was not a "reasonably foreseeable result of [FHHA's] actions," Res. Bankshares Corp., 407 F.3d at 637, we reverse the decision of the district court and remand for further proceedings consistent with this decision.

REVERSED AND REMANDED

BEAM, Senior Circuit Judge, dissenting.

I would affirm the well-reasoned conclusions of the district court in this matter.  J.A. 264-76.